OPINION OF THE COURT
 

 Smith, J.
 

 The issue in this case is whether the 1978 amendment to Banking Law § 576 abrogated the common-law rule that cancellation of an insurance contract becomes effective when it is received by the insurance company. We conclude that it did not. Because we hold that an insurance company must receive a notice of cancellation before such cancellation can become effective, we affirm the order of the Appellate Division.
 

 In March 1996, Unigard Insurance Company issued and delivered an insurance policy to Prosper’s Trucking, Inc., covering Prosper’s business vehicles for the period March 22, 1996 to March 22, 1997. At about the same time, Prosper’s entered
 
 *15
 
 into a premium finance agreement with AFCO Credit Corporation whereby AFCO was given full authority to cancel Prosper’s policy with Unigard in the event that Prosper’s failed to pay a premium installment. The agreement required AFCO to comply with the statutory notice provisions of Banking Law § 576 in order to invoke its cancellation power.
 

 On November 1, 1996, AFCO allegedly mailed to Prosper’s a notice of intent to cancel the policy based on Prosper’s failure to make a premium payment. Prosper’s contends that it never received such notice of intent. Thereafter, AFCO sent to Prosper’s and Unigard a notice of cancellation dated November 19, 1996, which indicated that the policy would be cancelled as of November 25, 1996. Plaintiff Winnie A. Crump’s decedent died as a result of a November 29 accident with a Prosper’s driver, defendant Trent A. Emery. Prosper’s did not receive the cancellation notice until after November 29, and Unigard did not receive the cancellation notice until December 6, 1996.
 

 Plaintiff commenced a wrongful death action against Prosper’s and Emery in February 1997. Prosper’s sought a defense from Unigard, and Unigard disclaimed coverage, asserting that Prosper’s policy had been cancelled as of November 25, 1996. Thereafter, plaintiff filed this action, seeking a declaratory judgment that Unigard had a duty to defend and indemnify defendants in the underlying action. Unigard moved for summary judgment dismissing the complaint, and plaintiff and defendants Prosper’s and Emery each cross-moved for summary judgment.
 

 Supreme Court granted Unigard’s motion for summary judgment and dismissed the complaint. The court concluded that Banking Law § 576 (1) (d) abrogated the common-law rule requiring the insurer’s receipt of the cancellation notice for the cancellation to be effective. The court noted that “had the Legislature meant to codify the common law rule it had the opportunity, upon amending the statute in September 1978, to specify the cancellation would not be effective until received by the insurer.” Plaintiff appealed, and defendants Prosper’s and Emery cross-appealed.
 
 [1]
 

 The Appellate Division unanimously reversed, on the law, denied Unigard’s motion for summary judgment, granted the
 
 *16
 
 cross motions of plaintiff and defendants for summary judgment, and declared that Unigard had a duty to defend and indemnify the other defendants in the underlying action brought against them. The Court held that the common-law rule survived the 1978 amendment to section 576 of the Banking Law and that nothing in the legislative history compelled a different conclusion. We agree.
 

 Unigard argues here, as it did below, that section 576 of the Banking Law abrogated the common-law rule which required receipt of the cancellation notice by the insurer before such cancellation became effective. According to Unigard, the cancellation was effective on November 25, 1996, the date specified in the notice of cancellation dated November 19, 1996. Thus, it had no obligation to defend or indemnify Prosper’s for the November 29, 1996 accident.
 

 Plaintiff and Prosper’s counter that the 1978 amendment to Banking Law § 576 was meant to prevent the cancellation of insurance policies by “giving policyholders a grace period within which they could cure premium defaults, and thereby avoid cancellation of their insurance policies. * * * It certainly was not intended to facilitate the cancellation of insurance policies by abrogating common law rules that extended periods of coverage until insurers actually received a copy of the Notice of Cancellation.”
 

 While an insured traditionally paid premiums directly to an insurance company, insureds also may arrange for financing the policy with a premium finance agency. Article XII-B of the Banking Law, enacted in 1960, regulates insurance premium finance agencies. Specifically, Banking Law § 576 sets forth the procedures a premium finance agency must follow to effect a cancellation of an insurance contract. That section requires the premium finance agency to provide to an insured “[n]ot less than ten days written notice” of the intent to cancel the policy “unless the default is cured within such ten day period [, plus] three days for mailing” (Banking Law § 576 [1] [a]). The notice must also be mailed to the insurance agent (see
 
 id.).
 
 Once the time to cure has expired, the premium finance agency may act “in the name of the insured” to cancel a policy “by mailing to the insurer a notice of cancellation stating when thereafter the policy shall be cancelled * * *. A copy of the notice of cancellation shall also be mailed to the insured” (Banking Law § 576 [1] [d]). The statute further provides that “the insurance contract shall be cancelled as if such notice of cancellation had
 
 *17
 
 been submitted by the insured himself * * *” (Banking Law § 576 [1] [d]).
 

 The current language of section 576 reflects changes made to the statute in 1978. In its prior form, the statute required, among other things, 10 days “unconditional” written notice to the insured (plus three days for mailing) of the time and date of cancellation
 
 (see
 
 L 1978, ch 565).
 
 [2]
 
 Because the cancellation notice was unconditional, once the insurer received the notice, an insured could not cure the payment default and instead had to purchase a new policy to avoid a lapse in coverage
 
 (see
 
 Mem of Assembly Member Alan G. Hevesi, 1978 NY Legis Ann, at 328).
 

 The amended version maintained the same notification period but required that the notice be mailed to the insured and insurer as a “notice of intent” to cancel unless the default is rectified within that period. After the notice period expired, the premium finance agency could thereafter cancel the insurance contract by notifying the insurer of the date when the contract should be cancelled, with a copy of the notice sent to the insured
 
 (see
 
 Budget Report on Bills, Bill Jacket, L 1978, ch 565; Banking Dept Mem in Support, Bill Jacket, L 1978, ch 565 [commenting that “(t)he bill would provide reasonable and appropriate pro-consumer modification to the cancellation procedure for premium finance agencies. It would provide more adequate notice to the defaulting insured of his opportunity to cure his default”]). Memoranda evaluating the 1978 amendment emphasize that it was meant to protect the insured and third parties by preventing gaps in coverage
 
 (see
 
 Mem of State Exec Dept, 1978 McKinney’s Session Laws of NY, at 1744; Mem of Assembly Member Alan G. Hevesi, 1978 NY Legis Ann, at 328).
 

 We conclude that the plain language of the statute — which provides that the “insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself’ — does not indicate an intent to abrogate the common-law rule that extends the period of coverage until the insurer
 
 *18
 
 receives the notice of cancellation.
 
 [3]
 
 We note that there is also nothing in the legislative history of the 1978 amendment revealing an intent to abrogate the common-law rule
 
 (see Boston Old Colony Ins. Co. v Liberty Mut. Ins. Co.,
 
 118 Misc 2d 414 [Sup Ct 1983]). To the contrary, the express intent of the amendment was to give notice to the defaulting insured of its opportunity to cure the default so as to prevent coverage gaps, and that would be undermined if the statute were interpreted to abrogate the common-law rule.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Ciparick, Wesley, Rosenblatt, Grafeeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Supreme Court also determined that Unigard had met its burden of establishing strict compliance with the notice provisions of section 576. Although Prosper’s and plaintiff disputed that issue at the Appellate Division, they do not challenge the strict compliance determination here. That Court did not reach the issue, and it is not before us on this appeal.
 

 [2]
 

 . Prior to amendment in 1978, Banking Law § 576 (1) (d) provided: “A copy of such cancellation notice shall be sent to the insurer or insurers prior to the effective date of cancellation containing a statement that it is a true copy of the notice of cancellation served upon the insured or insureds, whereupon the insurance contract shall be cancelled with the same force and effect as if the aforesaid notice of cancellation had been submitted by the insured himself, without requiring the return of the insurance contract or contracts.”
 

 [3]
 

 . Contrary to the parties’ arguments, we did not resolve this question in
 
 Savino v Merchants Mut. Ins. Co.
 
 (44 NY2d 625 [1978]), and nothing therein is inconsistent with the holding we reach today.