◼ LOCAL GOVERNMENT ASSISTANCE CORPORATION et al., Appellants, v SALES TAX ASSET RECEIVABLE CORPORATION et al., Respondents. [773 NYS2d 460]—

Mugglin, J. Appeals (1) from an order of the Supreme Court (Benza, J.), entered August 20, 2003 in Albany County, which denied plaintiffs' motion for a preliminary injunction enjoining defendants from implementing the Municipal Assistance Corporation Refinancing Act, and (2) from an order of said court, entered September 17, 2003 in Albany County, which, inter alia, granted defendants' motion for summary judgment declaring said act constitutional as challenged.

As the result of a severe fiscal crises in the 1970s, the Legislature created the Municipal Assistance Corporation (hereinafter MAC) for defendant City of New York to provide long-term financing for the City's short-term debt. MAC bonds were issued for that purpose and were to be retired over an approximately 30-year period with the use of sales tax proceeds.

Beginning in 2000, the City again was beset with a severe financial crisis, prompting the Legislature to devise a means to assist the City in retiring the remaining $2.5 billion MAC bond indebtedness, then due at the rate of $500 million annually for five remaining years. The Legislature purported to accomplish that by enacting the MAC Refinancing Act (hereinafter the Act) in May 2003 (*see* L 2003, ch 62, part A4; ch 63, part V).

Pursuant to the Act, plaintiff Local Government Assistance Corporation (hereinafter LGAC), a public authority created to issue debt and provide funding for public services, is to pay the City $170 million annually until the year 2034. The Act also authorizes the City's mayor to assign such payments to a not-

for-profit corporation to be formed for the purpose of issuing bonds, the proceeds of which are to be used to retire the remaining MAC debt (*see* Public Authorities Law § 3238-a). To that end, defendant Sales Tax Asset Receivable Corporation (hereinafter STARC) was created.

Plaintiffs commenced this action alleging that the Act violates the NY and US Constitutions in that it creates an annual payment obligation not subject to annual appropriation by the Legislature and not approved by referendum (*see* NY Const, art VII, § 11), constitutes impermissible revenue financing by the City (*see* NY Const, art VIII, § 2) and unconstitutionally impairs the contractual rights of LGAC bondholders (*see* US Const, art I, § 10). Plaintiffs thereafter moved for a preliminary injunction, which Supreme Court denied. Plaintiffs appealed that denial and obtained a preliminary injunction from this Court pending that appeal. Thereafter, defendants moved and plaintiffs cross-moved for summary judgment. Supreme Court granted defendants' motion in all respects, finding the Act constitutional, and plaintiffs appeal from that determination as well.

As a starting point, we note that, inasmuch as the right to " 'appeal from an intermediate order terminates upon the entry of a final judgment,' " plaintiffs' appeal from the denial of their motion for a preliminary injunction must be dismissed (*Beretz v Diehl*, 302 AD2d 808, 809 n 2 [2003], quoting *Dolan v Jaeger*, 285 AD2d 844, 846 n 2 [2001]).

With regard to plaintiffs' first contention that the Act violates NY Constitution, article VII, § 11, it has long been recognized that state obligations payable within one year are not considered "debt" subject to the referendum requirement of the NY Constitution, whereas obligations that extend beyond one year are (*see Schulz v State of New York*, 84 NY2d 231, 242-243 [1994], *cert denied* 513 US 1127 [1995]). However, legislative proposals to fund projects over a period of years do not create legally binding debt if such funding is subject to annual legislative appropriations (*see id.* at 249).

Here, the Act provides that LGAC shall transfer $170 million annually to the City for a period of 30 years (*see* Public Authorities Law § 3238-a). A provision in LGAC's enabling legislation states that the agreement of the state to make such payments "shall be deemed executory only to the extent of appropriations available for payments under this section and no liability on account of any such payment shall be incurred by the state beyond such appropriations" (Public Authorities Law § 3240 [5]). However, the Legislature amended that provision to specifically provide that "this subdivision shall not apply for payments

made pursuant to" Public Authorities Law § 3238-a, thus clearly exempting section 3238-a payments from the necessity of annual legislative appropriations (Public Authorities Law § 3240 [5]; *see* L 2003, ch 62, part A4, § 2) and violating the provisions of NY Constitution, article VII, § 11. The Act, to that extent, clearly is unconstitutional.

The issue then distills to whether the foregoing amendment is severable. In that regard, "[i]t is axiomatic that a court should refrain from declaring a statute unconstitutional when only a portion thereof is objectionable, and this is particularly true when [as here] the law contains a severability clause" (*Waste Recovery Enters. v Town of Unadilla*, 294 AD2d 766, 767 [2002], *appeals dismissed* 100 NY2d 614 [2003], *lv denied* 1 NY3d 507 [2004]). Nevertheless, where severance of the offending provision would result in a statutory scheme unintended by the Legislature, the entire statute must be deemed unconstitutional (*see People ex rel. Alpha Portland Cement Co. v Knapp*, 230 NY 48, 60 [1920], *cert denied* 256 US 702 [1921]).

Plaintiffs contend that by exempting Public Authorities Law § 3238-a payments from the requirement of annual legislative appropriations, the Legislature intended to assure the rating agencies and prospective bond purchasers that there was little or no risk in such investment, thereby assuring the saleability of the bonds. Assuming that to be true, severance does not result in a complete disruption of the legislative objective as urged by plaintiffs. It is beyond cavil that the overriding purpose of the Legislature in creating the Act was to assist the City financially in enabling it to eliminate the remaining payments due on the MAC indebtedness. Such purpose will be accomplished even with the severance of the offending portion of the Act.

Next, plaintiffs contend that the portion of the Act providing for the assignment by the City of the LGAC payments to STARC constitutes impermissible revenue financing in that the City has obligated future sources of revenue for immediate cash to satisfy short-term indebtedness. In so doing, argue plaintiffs, the City has contracted indebtedness without pledging its faith and credit in contravention of the provisions of NY Constitution, article VIII, § 2. We disagree.

The Act permits the City to "assign all or any portion of [the annual payments from LGAC] to [STARC] and, upon such assignment, the amount so assigned shall be the property of [STARC] for all purposes" (Public Authorities Law § 3238-a). In return, STARC will provide the City with the proceeds from the sale of its bonds. Contrary to plaintiffs' contention, such assignment does not create a debt in the form of a "revenue bond."

Pursuant to the assignment, LGAC is obligated to make the annual payments to STARC in order to fund STARC's debt service on *its* bonds. In the event that LGAC should fail to make one or more payments to STARC resulting in STARC's default in payment of the bonds, the bondholders will have no claim against the City. In short, the debt created is that of STARC, not the City. Such financing schemes repeatedly have withstood constitutional attack (*see e.g. Wein v City of New York,* 36 NY2d 610, 618 [1975]; *Comereski v City of Elmira,* 308 NY 248, 252 [1955]). Indeed, we have had occasion to observe that "in order to constitute debt within the meaning of the State and local finance articles of the NY Constitution, the State or locality must *legally* be obligated to the bondholders in the event of default" (*Schulz v State of New York,* 193 AD2d 171, 179 [1993], *affd* 84 NY2d 231 [1994], *cert denied* 513 US 1127 [1995] [emphasis in original]). Such is not the case under the provisions of the Act.

Finally, plaintiffs contend that the Act unconstitutionally impairs the contractual rights of LGAC bondholders, a contention with which we disagree. We acknowledge that the state pledged to LGAC bondholders not to limit or alter LGAC's rights to fulfill the terms of any agreement between LGAC and its bondholders or to impair the bondholders' rights or remedies (*see* Public Authorities Law § 3241 [1]). We also acknowledge that in its 1991 and 2002 bond resolutions, LGAC pledged that its bondholders would have a first priority on the tax dollars available to LGAC.

While the Act does provide that "[n]otwithstanding any inconsistent provision of law [LGAC] shall transfer" $170 million to New York City (Public Authorities Law § 3238-a), this provision is not inconsistent with the pledge contained in Public Authorities Law § 3241 (1) for two reasons. First, nothing in the Act explicitly requires that the $170 million be paid at the expense of the existing LGAC bondholders. Second, because we have severed the constitutionally offensive amendment to Public Authorities Law § 3240 (5), the $170 million payment is subject to annual appropriation. The Act does not require LGAC to make the $170 million payment in the event of a shortfall in the appropriation (*see* Public Authorities Law §§ 3238-a, 3239 [1]; State Finance Law § 92-r [5] [a]). Moreover, as the Legislature is presumed to have known of the pledge contained in Public Authorities Law § 3241 (1), if it had intended the Act to have the objectionable consequence of impairing the security of LGAC's existing bondholders, it would have said so in explicit language (*see* McKinney's Cons Laws of NY, Book 1, Statutes

§ 74, at 158-159; *Crump v Unigard Ins. Co.*, 291 AD2d 692, 693 [2002], *affd* 100 NY2d 12 [2003]).

Mercure, J.P., Peters and Lahtinen, JJ., concur.

Crew, J. (concurring in part and dissenting in part). I concur with the majority's conclusion that the Legislature's amendment to Public Authorities Law § 3240 (5) (*see* L 2003, ch 62, part A4, § 2) is severable and, further, that the portion of the Municipal Assistance Corporation Refinancing Act (hereinafter the Act) providing for the assignment of payments by plaintiff Local Government Assistance Corporation (hereinafter LGAC) to defendant Sales Tax Asset Receivable Corporation (hereinafter STARC) does not constitute impermissible revenue financing in contravention of NY Constitution, article VIII, § 2. I disagree, however, with that portion of the majority statement holding that the Act does not impair the contractual rights of existing LGAC bondholders.

The majority posits that had the Legislature intended to impair the security of LGAC's existing bondholders, it would have said so in explicit language. In my view, the Legislature could not have been more explicit when it provided that "[n]otwithstanding *any* inconsistent provision of law [i.e., Public Authorities Law § 3239 (1) and State Finance Law § 92-r (5) (a)] [LGAC] shall transfer" $170 million annually to defendant City of New York (Public Authorities Law § 3238-a [emphasis added]). Granted, we have held the offending provisions of Public Authorities Law § 3240 (5) to be severable, thus requiring annual appropriations. However, in the event that the Legislature appropriates funds sufficient to satisfy LGAC's present debt service or STARC payments, but not both, the Act makes plain that LGAC shall pay STARC $170 million. Thus, the Act does more than put STARC bondholders on par with LGAC's existing bondholders, it grants them preferred status.* Accordingly, I conclude that the Act indeed impairs the contractual rights of LGAC's bondholders.

Ordered that the appeal from the order entered August 20, 2003 is dismissed, without costs.

Ordered that the order entered September 17, 2003 is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment declaring constitutional the amendment to Public Authorities Law § 3240

---

* Notably, some members of the Legislature seem to have recognized this, having proposed an amendment to the Act providing that the payments to the City be subordinate in all respects to any and all other amounts (*see* 2003 NY Senate Bill S 5692, part J, § 3; 2003 NY Assembly Bill A 9097, part J, § 3). That amendment, however, was not enacted into law.

(5), as contained in L 2003, ch 62, part A4, § 2, and as denied plaintiffs' cross motion declaring said amendment unconstitutional; motion denied to that extent, cross motion granted to that extent and said amendment is declared unconstitutional and severed from the remainder of the Municipal Assistance Corporation Refinancing Act; and, as so modified, affirmed.