■ In the Matter of DEERBROOK INSURANCE COMPANY, Appellant, v JAMEL MCGREGOR, Respondent. LIBERTY MUTUAL INSURANCE COMPANY et al., Proposed Additional Respondents. [796 NYS2d 410]—

In a proceeding pursuant to CPLR article 75, inter alia, to permanently stay arbitration of a claim for uninsured motorist benefits, the petitioner appeals from an order of the Supreme Court, Kings County (Bernstein, J.H.O.), dated July 14, 2004, which, after a hearing, determined that an insurance policy issued by the proposed additional respondent-respondent, Liberty Mutual Insurance Company, was cancelled before the date of the subject accident, and, in effect, denied the petition and dismissed the proceeding.

Ordered that the order is reversed, on the law, with costs, the petition is granted, and the arbitration is permanently stayed.

Jamel McGregor, a pedestrian, was injured when he was struck by a vehicle driven by the proposed additional respondent Cheryl F. Davis. After obtaining a judgment against Davis, McGregor demanded arbitration of a claim for uninsured motorist coverage made pursuant to an insurance policy issued to his mother by the petitioner, Deerbrook Insurance Company (hereinafter Deerbrook). Deerbrook commenced this proceeding to permanently stay arbitration. Deerbrook asserted, inter alia, that the Davis vehicle was insured on the date in question by the proposed additional respondent Liberty Mutual Insurance Company (hereinafter Liberty Mutual). At a hearing, Liberty Mutual sought to prove that the policy issued to Davis had been cancelled several days before the accident by Davis' insurance premium finance agency in accordance with Banking Law § 576.

The Supreme Court, in effect, determined that the policy was cancelled before the date of the accident and, in effect, denied the petition. We reverse.

Banking Law § 576 provides for a two-step process by which an insurance premium finance agency may cancel a policy of insurance issued to a client when the client defaults. First, the insurance premium finance agency must give both the client and the client's insurance agent or broker no less than 10 days' notice (13 days if the notice is mailed) of an intent to cancel the policy if the default is not cured within such time period (*see* Banking Law § 576 [1] [a]). If the default is not cured, the insurance premium finance agency "may thereafter, in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation stating when thereafter the policy shall be cancelled" (Banking Law § 576 [1] [d]). The Court of Appeals has held that Banking Law § 576 did not abrogate the common-law rule that the policy remains in effect until the insurance company actually receives a copy of the notice of cancellation (*see Crump v Unigard Ins. Co.*, 100 NY2d 12, 17-18 [2003]). Strict compliance with the statute is required (*see Parkside Food Ctr. v United Intl. Ins. Co.*, 193 AD2d 658, 659 [1993]; *L.Z.R. Raphaely Galleries v Lumbermens Mut. Cas. Co.*, 191 AD2d 680, 681 [1993]). Here, Liberty Mutual presented no evidence as to when it actually received a copy of the notice of cancellation. Rather, at the hearing, Liberty Mutual argued that the policy was cancelled on the date stated in the notice of cancellation, which was before the date the notice was mailed. The cancellation was not filed with the Department of Motor Vehicles until more than a week after the accident. Thus, there was a failure of proof that the Liberty Mutual policy was cancelled before the accident. Consequently, the petition should have been granted. H. Miller, J.P., Ritter, Goldstein and Spolzino, JJ., concur.