OPINION OF THE COURT
Melvin S. Barasch, J.
Plaintiff has moved by order to show cause for entry of an order (a) preventing defendant’s representatives from entering all rooms at 26 Rugby Road, Brooklyn, New York; (b) ordering defendant to relinquish possession and control of all corporate records, books, documents, financial records and checkbooks; (c) directing defendant to account to plaintiff for all corporate and religious monies received and disbursed, and (d) resign his position as a religious representative of plaintiff. By way of background, plaintiff states that it is a "not-for-profit corporation” organized to "advance the religious interests and serve the Cambodian and Buddhist population in Brooklyn and the adjoining Metropolitan area”, and that in 1987 it purchased a one-family house at 26 Rugby Road in Brooklyn "for the purpose of establishing a temple/residence for the furtherance of religious study” and to serve "as a magnet for the Cambodian Buddhist population in Brooklyn.” In 1987, plaintiff, through the INS, sponsored defendant’s immigration from Thailand to serve as its monk, agreeing to provide food, shelter and "other living necessities” in exchange for his services in performing religious duties. These duties were to include conducting various religious ceremonies, such as meditations, ordinations, weddings, funerals, memorial services, home dedication *18 ceremonies, and to otherwise be a spiritual counselor to the congregation.
Plaintiff, in its affidavit in support of the order to show cause, goes on to allege, in general terms, that since 1993 defendant has behaved inappropriately in public, and breached certain basic tenets of the religion, in a way that purportedly has resulted in a decrease in membership and contributions. Defendant has, according to plaintiff, not only refused its attempts to resolve the issues of discord, but has demanded full authority to exercise control over the organization, and "has vowed to dissolve the corporation, and create chaos among its members” in the event that he is not given such authority.
On April 29, 1995, defendant allegedly denied officials of plaintiff access to the corporate books and records. On April 30, defendant purportedly changed the locks in the temple. Plaintiff then sought judicial intervention.
Defendant, in opposition, cites the applicability of certain relevant provisions of the Religious Corporations Law, specifically, sections 2-a and 2-b, which extend its application to corporations organized under the Not-For-Profit Corporation Law, and sections 25 and 200, which prohibit the dismissal or removal of a minister by the trustees in the absence of the consent of a duly noticed and conducted corporate meeting.*'
*19 Section 2-b (1) (a) of the Religious Corporations Law provides that in the event that "any provision of the not-for-profit corporation law conflicts with any provision of this chapter, the provision of this chapter shall prevail.” (Religious Corporations Law § 2-b [1][a].) A (religious) corporation may exist in fact without being legally constituted. (Matter of Kaminsky, 251 App Div 132, 136, affd 277 NY 524; Matter of Leuken, 97 Misc 2d 201.) In thus determining the threshold question of the applicability of the Religious Corporations Law, the court will look to the provisions of the plaintiff corporation’s certificate of incorporation, as well as the actual practices of the organization as revealed in the papers. (Matter of Agudist Council v Imperial Sales Co., 158 AD2d 683; Kroth v Congregation Chebra Ukadisha Bnai Israel Mikalwarie, 105 Misc 2d 904.) The only conclusion that can thus be drawn is that the plaintiff corporation was established primarily for religious purposes, continues to operate as such, and thus falls within the ambit of the Religious Corporations Law.
Proof of the predominantly religious character of the plaintiff corporation is initially to be found in its certificate of incorporation. Article 3 of this document provides, as the purposes for which the corporation is organized, that it is,
"1. To operate exclusively for religious, educational, cultural and charitable purposes within the meaning of the Internal Revenue Code of 1954. In furtherance of these purposes, the watt samakki-dhammikaram, inc. shall establish a place called watt samakki-dhammikaram for the study of Buddhism with respect to its philosophy, its culture and its impact on the world. In particular, the [corporation] shall * * *
"d) provide facilities for the practice of meditation and other Buddhist disciplines.”
The fact that the certificate states purposes ancillary or unrelated to that of providing a place of worship and/or religious practice is irrelevant to this determination. In Matter of Agudist Council v Imperial Sales Co. (supra) the Appellate Division affirmed Supreme Court’s denial of approval of a contract for the sale of petitioner’s senior citizen center due to its failure to comply with certain provisions of the Religious Corporations Law. It held that the court, in reaching its determination that this was a religious corporation, properly relied on the language in the certificate of incorporation stating that the corporation’s purpose was to "provide religious services and services to senior citizens” (158 AD2d, at 683).
In addition to the language found in its certificate of incorporation, plaintiffs own moving papers support a finding *20 of its primarily religious purpose. As previously noted, plaintiff, through the chairman of its board of directors, states (a) that it was organized to advance the religious interests and serve the Cambodian and Buddhist population in Brooklyn and the adjoining metropolitan area; (b) that the subject premises were purchased for use as a templet residence, and (c) that plaintiff sponsored and employed defendant for significant religious purposes. These statements support a finding that plaintiff has sought to establish for itself a position of importance in the religious life of New York’s Cambodian-Buddhist population, and plaintiff fails to make the slightest showing that its substance is secular or that its religious activities can be differentiated from its nonreligious objectives. (See, Kittinger v Churchill, 161 Misc 3, affd 249 App Div 703.) Thus, even if plaintiff’s origins could be construed as nonreligious, its present activities cast it as a de facto religious corporation, subject to the provisions of the Religious Corporations Law. (Kroth v Congregation Chebra Ukadisha Bnai Israel Mikalwarie, supra.) This being the case, plaintiff’s directors are without authority to terminate defendant’s employment or demand his resignation in the absence of a corporate resolution empowering them to do so (Religious Corporations Law §§ 25, 200), and that branch of the plaintiff’s motion is denied.
However, defendant admits in his answering affidavit that he has involved himself in plaintiff’s financial affairs, questioned certain corporate expenditures and withheld certain records. Defendant cannot substitute moral imperative for the legal power to intervene in matters where he has no legal authority, and he has failed to indicate how, if at all, he is empowered to involve himself in corporate affairs. Moreover, he does not controvert the plaintiff’s allegations that he has physically barred plaintiff’s representatives from the premises. Accordingly, that part of plaintiff’s motion seeking an order directing defendant to relinquish possession and control of all corporate records, books, etc., and for an accounting for all corporate and religious monies received and disbursed, is granted, and defendant is further directed to restore access to plaintiff’s representatives forthwith.

 Section 25 of the Religious Corporations Law, entitled "Pastoral relation”, provides, "No provision of this chapter authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given and person to preside thereat ascertained and the qualification of voters thereat determined, not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected.” (Religious Corporations Law § 25.)
Section 200 of the Religious Corporations Law, entitled "Control of trustees by. corporate meetings; salaries of ministers”, provides, in relevant part, "The trustees of an incorporated church to which this article is applicable, shall have no power to settle or remove or fix the salary of the minister * ** * except when such trustees are also the spiritual officers of such church.” (Religious Corporations Law § 200.)
The term " 'minister’ ” is defined in section 2 of the Religious Corporations Law, as including "a duly authorized pastor, rector, priest, rabbi, and a person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if any, to which the church belongs, or otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue.” • (Religious Corporations Law § 2.)