[1 NYS3d 169]

DAVID KAMCHI et al., Appellants, v CHARNA WEISSMAN, Individually and as President of the Board of Trustees of Congregation Shaarey Israel, et al., Respondents.

Second Department, December 31, 2014

144

---

### APPEARANCES OF COUNSEL

*Kaiser Saurborn & Mair, P.C.*, New York City (*Henry L. Saurborn, Jr.* of counsel), for appellants.

*Savad Churgin*, Nanuet (*Susan Cooper* and *Joseph Churgin* of counsel), for respondents.

*Zane and Rudofsky*, New York City (*Edward S. Rudofsky* of counsel), for amicus curiae United Synagogue of Conservative Judaism.

### OPINION OF THE COURT

DICKERSON, J.

Introduction

The plaintiffs are members of the Congregation Shaarey Israel (hereinafter the Congregation), and the Congregation's former rabbi, Michael Dick (hereinafter the Rabbi). The defendants include members of the Congregation's Board of Trustees (hereinafter the Board). The Rabbi had been employed as rabbi of the Congregation by an agreement which was to expire on July 31, 2011. As that date approached, the Board voted to deny the Rabbi renewal or extension of his employment agreement. According to the plaintiffs, on several occasions, members of the Congregation called for a congregation-wide vote on the matter. However, the Board refused to allow such a vote. The plaintiffs commenced this action alleging that

the Board had usurped the Congregation's authority to choose its own spiritual leader, in violation of both Religious Corporations Law § 200 and the Congregation's bylaws, by not only declining to extend or renew the Rabbi's contract, but by also blocking the Congregation members' efforts to be heard and participate in this decision. The defendants moved to dismiss the complaint, inter alia, for failure to state a cause of action. The Supreme Court granted that branch of the motion which was to dismiss the complaint for failure to state a cause of action, concluding that neither Religious Corporations Law § 200 nor the Congregation's bylaws prohibited the Board from making the determination not to renew or extend the Rabbi's contract. For the reasons that follow, we conclude that Religious Corporations Law and the Congregation's bylaws do not grant the Board the power to make the determination to remove a rabbi. We further conclude that the plaintiffs have viable causes of action premised on the defendants' alleged violation of Religious Corporations Law and the Congregation's bylaws based on their allegations that the Board made its determination not to renew or extend the Rabbi's employment contract in the face of opposition from members of the Congregation who were denied an opportunity to vote on the matter. Accordingly, the Supreme Court erred in granting that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action.

Factual and Procedural Background

The plaintiffs David and Lynn Kamchi and Carol Boxer are members of the Congregation. The Rabbi is an ordained rabbi, and was formerly the rabbi of the Congregation. The defendants are members of the Board, including the defendant Charna Weissman, who, at all relevant times, was the president of the Congregation.

As set forth in the complaint, by written agreement dated March 24, 2009, the Congregation agreed to employ the Rabbi for a three-year term, from August 1, 2008, through July 31, 2011. On October 28, 2010, at a meeting of the Board, Weissman, without issuing prior notice that such a decision was under consideration, proposed that the Rabbi be denied renewal or extension as spiritual leader of the Congregation. A vote was taken and the Board approved Weissman's proposal.

On November 18, 2010, the Board held another meeting. At that meeting, members of the Congregation objected to the Board's vote, claiming that it violated the Congregation's

bylaws as well as New York statutory law. These members called for a vote by the entire Congregation as to whether to extend or renew the Rabbi's agreement to act as spiritual leader of the Congregation. The Board refused to allow such a vote to go forward.

In December 2010, 12 Board members submitted a petition demanding that Weissman call a special meeting of the Congregation to discuss the continued employment of the Rabbi by the Congregation following the expiration of his original agreement and, thereafter, for a vote on the matter. On December 21, 2010, Weissman announced that the Board had scheduled a special meeting of the Congregation for January 11, 2011. The plaintiffs allege that Weissman indicated that a vote concerning the Rabbi's future with the Congregation would be held at the meeting. However, when that meeting was eventually held on March 8, 2011, after being rescheduled, an agenda was distributed which indicated that no vote would be taken, but rather only a discussion would be held. According to the plaintiffs, upon realizing that the written agenda did not provide for a vote, many Congregation members simply left the meeting. Nonetheless, at the meeting, a motion was made, and seconded, to approve a new three-year term for the Rabbi. However, the defendant Joel Scheinert, whom Weissman appointed to oversee the meeting, refused to allow a vote on the motion.

The plaintiffs further claim that during the meeting, the defendant Bill Bradin defamed the Rabbi in front of those Congregation members in attendance. Specifically, Bradin allegedly stated,

> "that [the Rabbi] did not show up for morning services; that he failed to perform outreach for young families; that he used a different prayer book than the Congregation; that he failed to lead Friday services when special evenings were planned for the same day; that he allowed non-[k]osher foods into the Congregation's kitchen and did not properly control the kosher validation of the kitchen; and, that he did not lead the Jewish High Holiday services."

The plaintiffs allege that Bradin's statements "cast [the Rabbi] in a negative light and reflected adversely on his competence as a rabbi, and harmed his standing and reputation with the congregants and others in the community." The plaintiffs fur-

ther allege that Bradin's statements were made with the intent to "undermine [the Rabbi's] authority as the spiritual leader of the congregation, and also to aid and further the defendants' goal to interfere with and prevent the efforts by [the Rabbi] and some members of the congregation to secure his continued employment."

On March 24, 2011, Weissman was presented with another petition, signed by 29 Congregation members, demanding that the Congregation be permitted to vote on whether to retain the Rabbi beyond the expiration of his original agreement. However, Weissman and other Board officers refused to allow a vote. At a Board meeting on April 28, 2011, Weissman rejected the petition, and thereafter she and the Board's officers refused to schedule a special meeting for the Congregation to vote on whether to retain the Rabbi.

The plaintiffs commenced this action against Weissman, Bradin, and other members of the Board. In the first cause of action, the plaintiffs alleged that the defendants' actions violated Religious Corporations Law §§ 5 and 200. In the second cause of action, the plaintiffs alleged that the defendants' actions were arbitrary and capricious and violated the Congregation's bylaws. In the third cause of action, the plaintiffs alleged that the individual officers "abused their positions of trust and otherwise acted wrongfully, in bad faith and with malice" by manipulating the Board's vote on the retention of the Rabbi and by refusing to allow the Congregation to vote on the issue. The plaintiffs sought damages in the first three causes of action. In the fourth cause of action, the plaintiffs alleged that the defendants' actions, "motivated by malice and ill intent toward" the Rabbi, "intentionally and tortiously interfered with and damaged [the Rabbi's] relationship with the congregation, both economically and spiritually." In the fifth cause of action, the plaintiffs alleged that "Bradin slandered and defamed" the Rabbi. The fourth and fifth causes of action sought damages on behalf of the Rabbi only. In the sixth cause of action, the plaintiffs sought a judgment "declaring that the defendants have violated their rights, ordering the defendants to undertake remedial measures, and enjoining defendants from engaging [in] similar future unlawful conduct." In the seventh cause of action, the plaintiffs alleged that the Rabbi sustained damages because the defendants' "actions in conspiring to deny him the opportunity of a renewal or extension of his employment as [the Congregation's] rabbi violated his rights under law."

The defendants moved pursuant to CPLR 3211 (a) (7) and (11) to dismiss the complaint on the grounds that it failed to state a cause of action, and that they were entitled to a qualified immunity under Not-For-Profit Corporation Law § 720-a. In support of their motion, the defendants contended that the first, second, third, fourth, sixth, and seventh causes of action failed to state cognizable claims because their actions in voting to deny the Rabbi a renewal or extension of his contract were not barred by either Religious Corporations Law § 200 or the Congregation's bylaws. The defendants also contended that the fifth cause of action, alleging defamation, failed to state a cause of action because Bradin's statements were nonactionable expressions of opinion, or were privileged, and such privilege could only be overcome by a showing of actual malice, which was absent here. The defendants additionally maintained that they were entitled to a qualified privilege under N-PCL 720-a because they were officers and trustees of a tax-exempt religious organization, and the complaint did not allege conduct constituting the gross negligence which would be necessary to defeat the privilege.

To substantiate their claim that they were entitled to a qualified privilege under N-PCL 720-a, the defendants submitted an affidavit sworn to by the defendant Barry Haberman, who established, through certain attachments, that the Congregation is a tax-exempt organization under section 501 of the Internal Revenue Code (see 26 USC § 501 [c] [3]). The status of the Congregation as a tax-exempt organization within the meaning of 26 USC § 501 (c) (3) is not in dispute on appeal. The defendants also annexed a copy of the Congregation's bylaws as an exhibit to their motion papers.

In opposition, the plaintiffs argued that the defendants were not entitled to immunity pursuant to N-PCL 720-a because the complaint alleged conduct that was intended to cause harm. Further, they argued that under Religious Corporations Law §§ 5 and 200 and the Congregation's bylaws, the members of the Congregation, not the trustees, had an absolute right to vote on questions affecting the Congregation, including making the determination whether to hire or retain a spiritual leader. Finally, they argued that the defamation cause of action was sufficiently stated because the alleged defamatory statements were statements of fact rather than nonactionable expressions of opinion, and the complaint sufficiently alleged that the statements were made with malice.

Order Appealed From

In an order dated July 19, 2012, the Supreme Court granted that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action (2012 NY Slip Op 33729[U] [2012]). Addressing the first, second, third, fourth, and sixth causes of action, which were predicated on the Board's alleged wrongful conduct in voting against renewal or extension of the Rabbi's employment agreement, the court began its analysis by noting that the dispute between the parties was governed by both Religious Corporations Law § 200 and the Congregation's bylaws. The court then rejected the plaintiffs' contention that Religious Corporations Law § 200, which provides in relevant part that, "[t]he trustees of an incorporated church to which this article is applicable, *shall have no power to settle or remove or fix the salary of the minister*" (emphasis added), prohibited the Board from deciding not to renew or extend the Rabbi's employment. The court reasoned that the statutory language providing that the Board had no power to "settle or remove or fix the salary of the minister"

> "applies only to the salary of the minister . . . the trustees cannot choose the salary of the minister, or take such salary away from the minister. It plainly does not apply to the selection, hiring or firing of a minister, as plaintiffs assert. Plaintiffs' interpretation of this section, skewed by their deliberate misquoting of it, is thus entirely misplaced."
> (2012 NY Slip Op 33729[U], *3.)

The court further concluded that the Board's decision not to renew or extend the Rabbi's employment agreement did not violate the Congregation's bylaws. In this regard, the court noted that while the Congregation's bylaws contained a general provision authorizing members of the Congregation to vote on "any question affecting the Congregation," it also contained a specific provision expressly authorizing members of the Congregation to vote on the hiring of a rabbi. In the court's view, to read the general provision as authorizing the Congregation to vote on the extension or retention of a rabbi, or whether a rabbi's contract should be permitted to lapse, would render superfluous the specific provision which expressly authorized the Congregation to vote only on the hiring of a rabbi.

Turning to the fifth cause of action, alleging defamation, the Supreme Court first concluded that the plaintiffs could not es-

tablish damages, inasmuch as the allegedly defamatory statements were made after the determination not to renew the Rabbi's agreement had already been made. In the event that the statements could be deemed slander per se, the court determined that the statements came under a qualified privilege, as they were made at a meeting of the Congregation. The court concluded that the plaintiffs failed to allege that the statements were made with malice so as to overcome the qualified privilege.

With respect to the seventh cause of action, the Supreme Court held that since this cause of action was "based entirely on the premise that defendants did something wrong by not allowing the vote," and since the court had "already determined that a vote was unnecessary," this cause of action also "must fail as a matter of law." (2012 NY Slip Op 33729[U], *6.)

In light of its determination that the complaint failed to state a cause of action, the Supreme Court did not address that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (11) to dismiss the complaint based on qualified immunity.

The plaintiffs appeal.

Analysis

## Standard of Review

"In assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff 'the benefit of every possible favorable inference' " (*J.P. Morgan Sec. Inc. v Vigilant Ins. Co.*, 21 NY3d 324, 334 [2013], quoting *AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005]; *see Sacher v Beacon Assoc. Mgt. Corp.*, 114 AD3d 655, 656 [2014]; *Young v Brown*, 113 AD3d 761, 761 [2014]).

"A court is, of course, permitted to consider evidentiary material submitted by a defendant in support of a motion to dismiss pursuant to CPLR 3211 (a) (7)" (*Sokol v Leader*, 74 AD3d 1180, 1181 [2010]; *see* CPLR 3211 [c]). "If the court considers evidentiary material, the criterion then becomes 'whether the proponent of the pleading has a cause of action, not whether he has stated one' " (*Sokol v Leader*, 74 AD3d at 1181-1182, quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). "Yet, affidavits submitted by a defendant will almost never warrant dismissal under CPLR 3211 unless they

establish conclusively that [the plaintiff] has no cause of action" (*Sokol v Leader*, 74 AD3d at 1182 [internal quotation marks omitted]).

> "Indeed, a motion to dismiss pursuant to CPLR 3211 (a) (7) must be denied 'unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it' " (*Sokol v Leader*, 74 AD3d at 1182, quoting *Guggenheimer v Ginzburg*, 43 NY2d at 275).

### Religious Corporations Law

An allegation essential to much of the plaintiffs' action is that the defendants violated Religious Corporations Law, as well as the Congregation's bylaws.

"The primary purpose of the Religious Corporations Law is to provide an orderly method for the administration of the property and temporalities dedicated to the use of religious groups, and to preserve them from exploitation by those who might divert them from the true beneficiaries of the corporate trust" (*Morris v Scribner*, 69 NY2d 418, 423 [1987]; *see Saint Nicholas Cathedral of Russian Orthodox Church in N. Am. v Kedroff*, 302 NY 1, 29 [1950]).

"The general powers and duties of the trustees of religious corporations are set forth in Religious Corporations Law § 5" (*Morris v Scribner*, 69 NY2d at 423). Religious Corporations Law § 5 grants trustees authority to take certain specified actions in furtherance of their general powers and provides that duly adopted bylaws will control their actions. That section concludes,

> "[b]ut this section does not give to the trustees of an incorporated church, any control over the calling, settlement, dismissal or removal of its minister, or the fixing of his salary; or any power to fix or change the times, nature or order of the public or social worship of such church" (Religious Corporations Law § 5).

Religious Corporations Law § 200 provides,

> "A corporate meeting of an incorporated church, whose trustees are elective as such, may give directions, not inconsistent with law, as to the manner

in which any of the temporal affairs of the church shall be administered by the trustees thereof; and such directions shall be followed by the trustees. *The trustees of an incorporated church to which this article is applicable, shall have no power to settle or remove or fix the salary of the minister*, or without the consent of a corporate meeting, to incur debts beyond what is necessary for the care of the property of the corporation; or to fix or [change] the time, nature or order of the public or social worship of such church, except when such trustees are also the spiritual officers of such church" (Religious Corporations Law § 200 [emphasis added]).

"When presented with a question of statutory interpretation, our primary consideration 'is to ascertain and give effect to the intention of the Legislature' " (*Perez v Levy*, 96 AD3d 729, 730 [2012], quoting *Riley v County of Broome*, 95 NY2d 455, 463 [2000]). "The statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (*Perez v Levy*, 96 AD3d at 730; *see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *Matter of State of New York v Ford Motor Co.*, 74 NY2d 495, 500 [1989]). "[M]eaning and effect should be given to every word of a statute" (*Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 104 [2001]).

In concluding that those causes of action premised on an alleged violation of Religious Corporations Law § 200 failed to state a cause of action, the Supreme Court interpreted the relevant language of that section, emphasized above, as pertaining solely to the salary of the minister, or in this case, rabbi (*see* Religious Corporations Law § 2 [the term "minister" includes a duly authorized rabbi]). In other words, the Supreme Court concluded that the words "settle," "remove," and "fix," in that passage all modified the phrase "the salary of the minister."

■ We disagree with the Supreme Court's interpretation of the operative language. We conclude that a more natural reading of the provision "[t]he trustees . . . shall have no power to settle or remove or fix the salary of the minister" (Religious Corporations Law § 200) establishes that "settle or remove" do not modify "the salary of the minister." Rather, a more natural reading of this passage would be that the terms "settle,"

"remove," and "fix the salary of" all modify "the minister." Under this reading, the trustees have no power to settle, or hire, the minister; they have no power to remove, or terminate the engagement of, the minister; and, finally, they have no power to fix the salary of the minister.

Under the Supreme Court's interpretation of the relevant language, the words "settle" and "fix" would have the same meaning, thus rendering one of these terms superfluous. " 'Words are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning' " (*Leader v Maroney, Ponzini & Spencer*, 97 NY2d at 104, quoting *Cohen v Lord, Day & Lord*, 75 NY2d 95, 100 [1989]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 231). Moreover, the Supreme Court's interpretation would lead to the somewhat unnatural provision for the "removal" of a clergyperson's salary. Furthermore, the use of the word "or" to separate each of the three terms suggests an intent to distinguish three distinct concepts.

Additionally, our interpretation of the statute, prohibiting the trustees from settling or removing the minister, or fixing his or her salary, is supported by the consistent, and quite similar, language set forth in Religious Corporations Law § 5. We note in this regard that " '[a] statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent' " (*New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d 17, 23-24 [2012], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 97; *see Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687, 691 [2006]). "Furthermore, '[e]ach section of a legislative act must be considered and applied in connection with every other section of the act, so that all will have their due, and conjoint effect' " (*New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d at 24, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98, Comment at 221-222 n 23; *see Matter of Kaplan v Peyser*, 273 NY 147 [1937]).

Again, after delineating certain powers of trustees of religious corporations, Religious Corporations Law § 5 concludes, in pertinent part, "[b]ut this section does not give to the trustees of an incorporated church, any control over the calling, settlement, dismissal or removal of its minister, or the fixing of his salary" (Religious Corporations Law § 5). This provision is similar to the language at issue in Religious

Corporations Law § 200, is consistent with our reading of that language, and is inconsistent with the reading championed by the defendants and adopted by the Supreme Court.

The relatively few courts that have addressed the matter are in agreement that Religious Corporations Law § 200 precludes trustees from "settling" or "removing" the minister (*see Watt Samakki Dhammikaram, Inc. v Thenjitto*, 166 Misc 2d 16, 20 [Sup Ct, Kings County 1995]; *Zimbler v Felber*, 111 Misc 2d 867, 880-881 [Sup Ct, Queens County 1981]; *Kupperman v Congregation Nusach Sfard of The Bronx*, 39 Misc 2d 107, 113 [Sup Ct, Bronx County 1963]; *cf. People v Tuchinsky*, 100 Misc 2d 521, 523 [1979]).

In the order appealed from, the Supreme Court relied on *Matter of Saffra v Rockwood Park Jewish Ctr.* (239 AD2d 507 [1997]). That was a proceeding pursuant to CPLR article 75 to compel arbitration of a controversy relating to the termination of a rabbi's employment contract (*see id.* at 507). In dismissing the proceeding, this Court addressed the petitioner's argument based on Religious Corporations Law § 200 (*see id.* at 507-508). This Court stated, "While the actions of the Board of Trustees . . . indicated its desire not to continue the employment of the petitioner, it did not affirmatively terminate his employment. The petitioner's termination occurred solely because the contract expired. Thus, the Board did not usurp the authority of the congregation members" (*id.*). The basis for this Court's conclusion in *Saffra* that the Board of Trustees' acts did not usurp the authority of the congregation, was that the Board of Trustees, in fact, took no action. The rabbi's contract simply lapsed.

This case indeed bears significant similarities to *Saffra*. Here, the Rabbi's contract was allowed to lapse, terminating his engagement as rabbi of the Congregation. However, critically, in this case, the Board affirmatively barred the Congregation from voting on the issue of extending or renewing the Rabbi's contract. It is undisputed that the Board refused to allow the Congregation to vote on the matter. Again, as discussed above, pursuant to Religious Corporations Law § 200, the Board lacked the authority to remove the Rabbi. By refusing to allow the Congregation to act on the matter, the Board here usurped the Congregation's authority. Thus, the Supreme Court's, and the defendants', reliance on *Saffra* is misplaced.

## Congregation's Bylaws

We further find, contrary to the Supreme Court's conclusion, that the Congregation's bylaws did not limit the Congregation's authority to the hiring of a rabbi only, and exclude from the ambit of the Congregation's authority the power to extend or renew a hired rabbi's contract.

Article XXIII of the Congregation's bylaws broadly authorizes Congregation members in good standing "[t]o vote for Class IV Trustees and on any question affecting the Congregation." It cannot reasonably be disputed that the choice of spiritual leader of a congregation, and whether to renew that individual's appointment, is a "question affecting the Congregation." Indeed, one court observed, in the context of a case involving the discharge of the pastor of a Baptist Church, that the office of spiritual leader of a congregation

> "is one of dignity, reverence and esteem. Its import to the members of the congregation is of the greatest significance. It is one in which the entire congregation shares interest and one in the continuation of which, the entire congregation is entitled to a voice. It is not an office to be lightly bestowed or withdrawn" (*Matter of Hayes v Board of Trustees of Holy Trinity Baptist Church of Amityville*, 225 NYS2d 316, 320 [Sup Ct, Suffolk County 1962]).

In finding that Article XXIII conferred no such right upon the Congregation, the Supreme Court relied upon the fact that the Congregation's authority to hire a rabbi is expressly addressed elsewhere in the bylaws. In Article XII, entitled "THE RABBI," the bylaws state, among other things, that a "Rabbi shall be employed, engaged, retained and hired for a period of time and upon terms to be determined by the Board of Trustees and the Congregation, as the Rabbi and spiritual leader of this Congregation. The Members, at a Congregational meeting, shall approve the hiring of the Rabbi."

We disagree with the Supreme Court's conclusion that, if the bylaws are interpreted such that Article XXIII authorizes the Congregation to vote on the matter of renewing or extending its rabbi's engagement with the Congregation, the above provision of Article XII would be rendered superfluous, in contravention of well-settled contract interpretation principles (*see generally Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]; *Givati v Air Techniques, Inc.*, 104 AD3d

644, 645 [2013]). Under our interpretation of the bylaws, a reading of the broad provision of Article XXIII which includes the authority to be heard on matters such as extending or renewing a rabbi's engagement with the Congregation, as a "question affecting the Congregation," does not render the provision in Article XII, expressly authorizing the Congregation to approve of the hiring of a rabbi, superfluous. Rather, the bylaws merely take care in Article XII, "THE RABBI," to ensure that the Congregation may be heard on the crucial matter of choosing its spiritual leader. Moreover, the terms of Article XII expressly contemplate that the "Rabbi shall be . . . retained . . . for a period of time and upon terms to be determined by the Board of Trustees *and the Congregation*" (emphasis added). For these reasons, we conclude that the plaintiffs' allegations that the defendants' conduct in preventing the Congregation from determining whether to retain the Rabbi violated Religious Corporations Law § 200 and the Congregation's bylaws are legally cognizable. Accordingly, the Supreme Court erred in granting those branches of the defendants' motion which were to dismiss the first, second, third, fourth, sixth, and seventh causes of action pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

### Defamation

In the fifth cause of action, the plaintiffs assert that Bradin made defamatory statements about the Rabbi at a meeting of the Congregation.

█ " 'The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se' " (*Matter of Konig v CSC Holdings, LLC*, 112 AD3d 934, 935 [2013], quoting *Geraci v Probst*, 61 AD3d 717, 718 [2009]). "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly be the subject of a defamation action' " (*Gross v New York Times Co.*, 82 NY2d 146, 152-153 [1993], quoting *600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130, 139 [1992]). " 'In determining whether a complaint states a cause of action to recover damages for defamation, the dispositive inquiry is whether a reasonable listener or reader could have concluded that the statements were conveying facts about the plaintiff' "

(*Konig v CSC Holdings, LLC*, 112 AD3d at 935, quoting *Goldberg v Levine*, 97 AD3d 725, 725 [2012]). "Whether a particular statement constitutes an opinion or an objective fact is a question of law" (*Mann v Abel*, 10 NY3d 271, 276 [2008]; *see Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 381 [1977]). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation" (*Mann v Abel*, 10 NY3d at 276; *see Weiner v Doubleday & Co.*, 74 NY2d 586, 593 [1989]; *Steinhilber v Alphonse*, 68 NY2d 283 [1986]). The Court of Appeals has characterized the matter of distinguishing between opinion and fact for purposes of defamation analysis as "a difficult task" (*Mann v Abel*, 10 NY3d at 276 [internal quotation marks omitted]). Factors the Court of Appeals has identified to be considered in performing this task include:

> "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact" (*Mann v Abel*, 10 NY3d at 276 [internal quotation marks omitted]; *see Brian v Richardson*, 87 NY2d 46, 51 [1995]; *Gross v New York Times Co.*, 82 NY2d at 153; *Steinhilber v Alphonse*, 68 NY2d 283, 292 [1986]).

In their complaint, the plaintiffs allege that at the meeting of the Congregation on March 8, 2011, Bradin stated,

> "that [the Rabbi] did not show up for morning services; that he failed to perform outreach for young families; that he used a different prayer book than the Congregation; that he failed to lead Friday services when special evenings were planned for the same day; that he allowed non-[k]osher foods into the Congregation's kitchen and did not properly control the kosher validation of the kitchen; and, that he did not lead the Jewish High Holiday services."

Contrary to the defendants' contention, these statements have precise meanings which are readily understood, and they are thoroughly capable of being proven true or false (*see gener-*

*ally Mann v Abel*, 10 NY3d at 276; *Brian v Richardson*, 87 NY2d at 51; *Gross v New York Times Co.*, 82 NY2d at 153; *Steinhilber v Alphonse*, 68 NY2d at 292). Thus, the defamation cause of action is not subject to dismissal on the ground that the alleged statements constitute nonactionable expressions of opinion.

We also reject the defendants' contention that the defamation claim fails to state a cause of action because Bradin's statements were protected by a qualified privilege, and insufficient facts were alleged to show that he spoke with malice necessary to defeat privilege. "Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether" (*Liberman v Gelstein*, 80 NY2d 429, 437 [1992]). "When compelling public policy requires that the speaker be immune from suit, the law affords an absolute privilege, while statements fostering a lesser public interest are only conditionally privileged" (*id.*; *see 600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d at 135-136). "One such conditional, or qualified, privilege extends to a 'communication made by one person to another upon a subject in which both have an interest' " (*Liberman v Gelstein*, 80 NY2d at 437, quoting *Stillman v Ford*, 22 NY2d 48, 53 [1968]; *see Diorio v Ossining Union Free School Dist.*, 96 AD3d 710, 712 [2012]). This qualified privilege has been applied to communications carried out "in furtherance of a common interest of a religious organization" (*Berger v Temple Beth-El of Great Neck*, 41 AD3d 626, 627 [2007]). The rationale for applying this qualified privilege in circumstances such as this "is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded" (*Liberman v Gelstein*, 80 NY2d at 437).

The protection of this so-called "common interest" qualified privilege "may be dissolved if plaintiff can demonstrate that defendant spoke with 'malice' " (*Liberman v Gelstein*, 80 NY2d at 437; *see Diorio v Ossining Union Free School Dist.*, 96 AD3d at 712). "To establish the malice necessary to defeat the privilege, the plaintiff may show either common-law malice, i.e., spite or ill will, or may show actual malice, i.e., knowledge of falsehood of the statement or reckless disregard for the truth" (*Diorio v Ossining Union Free School Dist.*, 96 AD3d at 712 [internal quotation marks omitted]; *see Liberman v Gelstein*, 80 NY2d at 437-438; *see also New York Times Co. v Sullivan*, 376 US 254, 280 [1964]).

■ Here, the plaintiffs alleged that Bradin's statements

"were made with the intent to and did undermine [the Rabbi's] authority as the spiritual leader of the congregation, and also to aid and further the defendants' goal to interfere with and prevent the efforts by [the Rabbi] and some members of the congregation to secure his continued employment by [the Congregation]."

The plaintiffs also alleged that "Bradin's false statements cast [the Rabbi] in a negative light and reflected adversely on his competence as a rabbi, and harmed his standing and reputation with the congregants and others in the community." Contrary to the Supreme Court's determination, affording the complaint a liberal construction, accepting all facts as alleged in the pleading to be true, and according the plaintiffs the benefit of every possible favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87 [1994]; *Santana v Leith*, 117 AD3d 711 [2014]; *Sacher v Beacon Assoc. Mgt. Corp.*, 114 AD3d 655, 656 [2014]; *Young v Brown*, 113 AD3d 761, 761 [2014]; *Breytman v Olinville Realty, LLC*, 54 AD3d 703, 703-704 [2008]), it sufficiently alleged that Bradin made false statements of fact with common-law malice so as to overcome the common interest qualified privilege. "Since . . . the burden does not shift to the nonmoving party on a motion made pursuant to CPLR 3211 (a) (7), a plaintiff has no obligation to show evidentiary facts to support [his or her] allegations of malice on a motion to dismiss pursuant to CPLR 3211 (a) (7)" (*Shaw v Club Mgrs. Assn. of Am., Inc.*, 84 AD3d 928, 931 [2011] [internal quotation marks omitted]; *see Sokol v Leader*, 74 AD3d at 1182; *Kotowski v Hadley*, 38 AD3d 499, 500-501 [2007]).

Finally, as alleged, Bradin's defamatory statements would "tend to injure [the Rabbi] in [his] trade, business, or profession," and thus would constitute slander per se (*see Shaw v Club Mgrs. Assn. of Am., Inc.*, 84 AD3d at 930). Accordingly, the plaintiffs were not required to allege or prove special damages, as the law presumes that damages will result (*see Liberman v Gelstein*, 80 NY2d at 435; *Shaw v Club Mgrs. Assn. of Am., Inc.*, 84 AD3d at 930).

Accordingly, the Supreme Court erred in granting that branch of the defendants' motion which was to dismiss the fifth cause of action pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

### Qualified Immunity

Turning to that branch of the defendants' motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (11), which the Supreme Court did not address, N-PCL 720-a provides, in pertinent part, and with exceptions not relevant here,

> "no person serving without compensation as a director, officer or trustee of a corporation, association, organization or trust described in section 501 (c) (3) of the United States internal revenue code shall be liable to any person other than such corporation, association, organization or trust based solely on his or her conduct in the execution of such office unless the conduct of such director, officer or trustee with respect to the person asserting liability constituted gross negligence or was intended to cause the resulting harm to the person asserting such liability" (N-PCL 720-a).

Thus, "Not-For-Profit Corporation Law § 720-a confers a qualified immunity on uncompensated directors, officers, and trustees of certain not-for-profit corporations" (*Samide v Roman Catholic Diocese of Brooklyn*, 5 AD3d 463, 465 [2004]; *see Norment v Interfaith Ctr. of N.Y.*, 98 AD3d 955, 956 [2012]; *Palmieri v Marx*, 7 AD3d 688, 688 [2004]; *see also Bernbach v Bonnie Briar Country Club*, 144 AD2d 610, 611 [1988]).

On a defendant's motion pursuant to CPLR 3211 (a) (11) to dismiss a complaint premised on the qualified immunity conferred by N-PCL 720-a, the court must first determine whether the defendant is entitled to the benefit of N-PCL 720-a immunity (*see* CPLR 3211 [a] [11]). If so, the court must then determine "whether there is a reasonable probability that the specific conduct of such defendant alleged constitutes gross negligence or was intended to cause the resulting harm" (CPLR 3211 [a] [11]). Only if the court finds that the defendant is entitled to the benefits of N-PCL 720-a immunity, and finds that there is no reasonable probability of gross negligence or intentional harm, will the defendant be entitled to dismissal of the causes of action asserted against that defendant (*see* CPLR 3211 [a] [11]).

It is not disputed that the defendants are serving, without compensation, as "director[s], officer[s] or trustee[s] of a corporation, association, organization or trust described in section 501 (c) (3) of the United States internal revenue code," and that the wrongs alleged were the result of conduct undertaken

in the execution of these roles (N-PCL 720-a). Thus, they established, as an initial matter, their entitlement to the benefit of N-PCL 720-a immunity. Therefore, we must determine "whether there is a reasonable probability that the specific conduct of such defendant[s] alleged constitutes gross negligence or was intended to cause the resulting harm" (CPLR 3211 [a] [11]).

Initially, we note that the qualified immunity afforded by N-PCL 720-a is not applicable to the sixth cause of action, since that claim seeks a declaratory judgment and injunctive relief rather than money damages.

With regard to the remaining causes of action which seek money damages based on the defendants' conduct in usurping the Congregation's authority, the gravamen of the plaintiffs' claims are that the defendants, "in bad faith and with malice," usurped the Congregation's authority in "refusing to allow the congregation to" vote on the issue of the Rabbi's retention. The plaintiffs have alleged that the defendants refused to allow the congregants to vote on the matter in violation of Religious Corporations Law § 200 and the Congregation's bylaws, and notwithstanding several petitions and letters delivered to the defendants requesting that the Congregation be permitted to vote on the matter. Additionally, with regard to the defamation cause of action, as concluded above, the plaintiffs alleged malice. In short, essentially all of the plaintiffs' allegations involve the intentional infliction of harm by the defendants (see generally CPLR 3211 [a] [11]).

It has been held that

> "[u]nlike the low threshold for defeating a motion to dismiss under other provisions of CPLR 3211, a plaintiff faced with a motion pursuant to CPLR 3211 (a) (11) should lay bare proof supporting the alleged grossly negligent or intentional conduct and '[t]he mere possibility that such proof can develop does not suffice to keep the case alive'" (Krackeler Scientific, Inc. v Ordway Research Inst., Inc., 97 AD3d 1083, 1084 [2012] [citation omitted], quoting David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:34a at 55).

However, given the nature of the specific allegations as well as certain undisputed circumstances in this case, including the Board's refusal to allow the Congregation to vote notwithstand-

162

ing several demands, on this record, we conclude that there is a reasonable probability that the plaintiffs can establish that the defendants' actions constituted gross negligence or were intended to cause the resulting harm (*see* CPLR 3211 [a] [11]; *see also Norment v Interfaith Ctr. of N.Y.*, 98 AD3d at 956; *cf. Pontarelli v Shapero*, 231 AD2d 407, 410-411 [1996]). Accordingly, at this stage, the defendants are not entitled to the benefit of the qualified immunity conferred by N-PCL 720-a.

Based on all of the foregoing, the Supreme Court erred in granting that branch of the defendants' motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. Moreover, the defendants were not entitled to dismissal of the complaint pursuant to CPLR 3211 (a) (11) on the ground that their conduct was protected by a qualified immunity.

Accordingly, the order is reversed, on the law, with costs, and the defendants' motion to dismiss the complaint is denied.

Skelos, J.P., Leventhal and Hall, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action is denied.