[35 NYS3d 223]

Martin E. Gotkin, Appellant, v Allstate Insurance Company, Respondent.

Second Department, July 6, 2016

**APPEARANCES OF COUNSEL**

*Green & Willstatter*, White Plains (*Theodore S. Green* of counsel), for appellant.

*Lewis Johs Avallone Aviles, LLP*, Islandia (*Amy E. Bedell* of counsel), for respondent.

**OPINION OF THE COURT**

COHEN, J.

Insurance Law § 3425 imposes restrictions on a liability insurer's right to cancel, refuse to renew, or condition renewal of a policy, and requires the insurer to provide notice to the policyholder before any cancellation, nonrenewal, or conditional renewal occurs. At issue on this appeal is Insurance Law § 3425 (d) (1), which requires an insurer to notify a policyholder, at least 45 days before the end of the coverage period, of its intention to condition renewal "upon change of limits or elimination of any coverages," and to provide a specific reason for so conditioning renewal. For the reasons which follow, we find that the notice requirement of Insurance Law § 3425 (d) (1) applies where, as here, an insurer issues an umbrella policy providing the policyholder with additional coverage above the limits of his or her automobile coverage, and then increases the amount of underlying automobile liability insurance the policyholder must maintain before the additional coverage provided by the umbrella policy becomes available. We further find that an insurer's failure to comply with Insurance Law § 3425 (d) (1) provides a basis for reformation of the subject policy.

Beginning in 1990, the plaintiff, Martin E. Gotkin, maintained two policies of insurance with the defendant, Allstate Insurance Company: a primary automobile insurance policy and an excess liability insurance policy (hereinafter the umbrella policy). At the time the plaintiff initially purchased the umbrella policy, it required that he maintain underlying primary automobile insurance policy limits of at least $100,000 per claimant and $300,000 per occurrence for automobile bodily injury liability. The limit of liability for the umbrella policy was $1 million for each occurrence. In August 2004, the plaintiff changed his primary automobile insurance carrier to Nationwide Insurance Company, keeping the same policy limits of $100,000 per claimant and $300,000 per occurrence.

In October of 2004, the plaintiff renewed his Allstate umbrella policy while continuing to maintain the same underlying automobile insurance policy limits. However, he was billed an increased premium. By letter dated February 3, 2005, with enclosures, Allstate informed the plaintiff that the increased premium for the umbrella policy was billed in error. Enclosed with the February 2005 letter was an amended policy declarations page, which provided that for the premium period begin-

ning October 14, 2004, Allstate required underlying primary automobile insurance policy limits of $250,000 per claimant and $500,000 per occurrence. However, there was no language in the February 2005 letter notifying the plaintiff of this change. Rather, the only indication of this change was in an enclosed amended declarations page. Also enclosed with the February 2005 letter was an "Important Notice Concerning the Insurance You Must Maintain (Not a part of the Policy)," advising the plaintiff, among other things, to carefully read the provisions concerning the "Required Underlying Insurance." According to Allstate, its decision to increase the amount of underlying automobile insurance the plaintiff was required to maintain was prompted by the plaintiff's cancellation of his Allstate automobile insurance policy. Although the "limits of liability" for the umbrella policy remained $1 million for each occurrence, by increasing the amount of automobile insurance the plaintiff was required to maintain, Allstate created a gap in coverage between the then-existing primary insurance policy issued by Nationwide and the umbrella policy issued by Allstate.

A renewal policy for the period of October 14, 2005 through October 14, 2006 was thereafter sent to the plaintiff. An "amendatory endorsement," which reflected changes to the policy, did not mention the increase of the required underlying insurance limits in the primary automobile insurance policy to $250,000 per claimant and $500,000 per occurrence. The plaintiff renewed his umbrella policy with Allstate each year through 2009.

In July 2009, the plaintiff was involved in an automobile accident with another vehicle. The owner and operator of that vehicle subsequently commenced a personal injury action against the plaintiff and his wife. When the plaintiff submitted a claim for coverage under his umbrella policy, Allstate informed him that there was a gap in his insurance coverage of $150,000 due to his failure to maintain underlying policy limits of $250,000 per claimant and $500,000 per accident. Accordingly, Allstate denied coverage for any damages between $100,000 and $250,000, but extended coverage for any damages over $250,000.

By summons and verified complaint dated May 22, 2012, the plaintiff commenced this action against Allstate. As relevant to this appeal, the plaintiff sought reformation of his insurance contract with Allstate to provide coverage of $100,000 to $1

million without any gap. The plaintiff additionally sought declaratory relief directing Allstate to fill the umbrella policy's gap in coverage based upon its failure to timely notify him of a change in the underlying limits, in violation of Insurance Law § 3425 (d) (1). Allstate joined issue with a verified answer dated June 26, 2012.

The plaintiff subsequently moved for summary judgment to reform the umbrella liability insurance policy to provide coverage in the originally issued amounts of $100,000 to $1 million, and for a declaration that Allstate must provide coverage to him for amounts between $100,000 and $250,000. In support of his motion, the plaintiff argued that he was entitled to reformation of his umbrella policy because the evidence demonstrated that Allstate changed the underlying automobile policy limits without notifying him of the change. The plaintiff maintained that the February 2005 letter did not satisfy the notice requirements of Insurance Law § 3425 (d) (1) because it only addressed the change to the underlying policy limits in the "third page buried in the declaration[s]." Even assuming that this letter constituted notice of the policy change, the plaintiff maintained that it did not satisfy statutory requirements because it did not set forth an explanation for the policy change as required by Insurance Law § 3425 (d) (1). The plaintiff further alleged that Allstate violated Insurance Law § 3425 (d) (3), which requires an insurer to notify an insured of its intention to "substitute at the annual renewal date another approved policy form," and to provide the insured with a "full and clear comparison of the differences between the policy form as last issued and the substitute policy form."

In support of his motion, the plaintiff submitted, inter alia, interrogatory responses from an Allstate employee. The Allstate employee explained in his interrogatory responses that the plaintiff was entitled to a refund in February of 2005 because the premium for an umbrella policy with required underlying limits of $250,000 per claimant and $500,000 per occurrence was less than the premium for an umbrella policy with required underlying limits of $100,000 per claimant and $300,000 per occurrence. The Allstate employee confirmed that the change to "the required underlying automobile insurance policy limits was not due to recalculation of premiums," but rather, was made due to "an underwriting program put in place by Allstate in 1996." The Allstate employee also acknowledged that the "precipitating factor" for the increase in the underly-

ing limits was the plaintiff's cancellation of his primary automobile insurance policy with Allstate.

Allstate cross-moved for summary judgment, in effect, for a declaration in its favor. In support of its cross motion, Allstate contended that the plaintiff received clear notice of the increase in the required underlying automobile insurance limits, and that it was not required to comply with the statutory notice provisions of Insurance Law § 3425 (d) (1) because the increase in the required underlying limits of automobile coverage did not involve a nonrenewal or conditional renewal of the policy. Allstate also argued that Insurance Law § 3425 (d) (3) was not applicable because there had been no substitution of policy forms, and no change in the coverage provided by the plaintiff's personal umbrella policy. Allstate further contended that the plaintiff was not entitled to reformation of the insurance contract because there was no evidence of mutual mistake or fraud. In any event, even assuming that the change to the underlying limits in the 2004-2005 policy was ineffective, which Allstate did not concede, the plaintiff was properly notified of the change by the renewal policies for the 2005-2006 policy period, and thereafter. Accordingly, there was no basis for reformation of those subsequent renewal polices. Allstate additionally maintained that the plaintiff could not rely on his failure to read the umbrella policy each year as a defense because it is well settled that an insured is conclusively presumed to have read the insurance policy and consented to its terms.

In the order appealed from, the Supreme Court denied the plaintiff's motion, and granted Allstate's cross motion. The court concluded that the statutory notice requirements of Insurance Law § 3425 (d) did not apply because the increase in the amount of automobile liability insurance the plaintiff was required to maintain did not constitute a reduction in the limits of the umbrella policy. Rather, the coverage limit of the umbrella liability policy remained at $1 million.

Analysis

The subject umbrella policy is a "covered policy" under Insurance Law § 3425 (see Insurance Law § 3425 [a] [3]) and, thus, it is subject to the special renewal and cancellation restrictions which have been provided in that statute for the protection of consumers. Insurance Law § 3425 (d) (1) provides:

> "Unless the insurer, at least forty-five but not more
> than sixty days in advance of the end of the policy

period, mails or delivers to the named insured, at the address shown in the policy, a written notice of its intention not to renew a covered policy, *or to condition its renewal upon change of limits or elimination of any coverages,* the named insured shall be entitled to renew the policy upon timely payment of the premium billed to the insured for the renewal. *The specific reason or reasons for non-renewal or conditioned renewal shall be stated in or shall accompany the notice*" (emphasis added).

The crux of this controversy is whether the plaintiff is entitled to reformation of his insurance contract based on Allstate's alleged violation of Insurance Law § 3425 (d) (1). Granting reformation of an insurance contract under appropriate circumstances is not new or novel. Indeed, courts recognized well before the statutory notification requirements of Insurance Law § 3425 (d) were enacted that where a change to a renewal policy was not brought to the insured's attention at the time it was made, the insured was entitled to reform the policy so as to conform it to the earlier one (*see Hay v Star Fire Ins. Co.,* 77 NY 235, 240 [1879]; *see also Byron v Liberty Mut. Ins. Co.,* 63 AD2d 710 [1978]). More recently, courts have granted reformation of an insurance contract based on Insurance Law § 3425 (d) (3), which requires an insurer to give notice "in the same manner as is prescribed in paragraph one of this subsection" when the insurer, at the annual renewal date of a policy, substitutes "another approved policy form which contains at least substantially equivalent value in the aggregate of benefits" (*see Valentine v Quincy Mut. Fire Ins. Co.,* 123 AD3d 1011, 1016 [2014]; *Bloom v St. Paul Travelers Cos., Inc.,* 57 AD3d 819, 820 [2008]; *Janes v New York Cent. Mut. Ins. Co.,* 281 AD2d 982 [2001]). However, the question of whether an insurer that issues an umbrella policy is required to provide notice of a change in the underlying limits pursuant to Insurance Law § 3425 (d) (1), and whether the failure to do so provides a basis to grant reformation of the umbrella policy, is an issue of first impression in our Court.

■■ ■ We hold that a change to the requirements of the underlying limits to the primary automobile insurance policy, which would create a gap in coverage in an umbrella policy and upon which renewal is conditioned, requires that the insurer provide proper notice pursuant to Insurance Law

§ 3425 (d) (1), and that the failure to do so provides a basis to grant reformation of the umbrella policy.

Pursuant to Insurance Law § 3425 (d) (1), written notice is required, among other things, of an insurer's intention "to condition [a policy's] renewal upon change of limits or elimination of any coverages" (Insurance Law § 3425 [d] [1]). Here, the Supreme Court interpreted the phrase "change of limits" in Insurance Law § 3425 (d) (1) to mean a change only in the umbrella policy limits. The court, in effect, held that there was no change of the policy limits because the umbrella policy covered up to $1 million both before and after the change of the underlying limits. However, this narrow interpretation is not supported by the language of the statute, and defeats the primary aim of the notice requirements of Insurance Law § 3425 (d).

"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (*Kamchi v Weissman*, 125 AD3d 142, 152 [2014] [internal quotation marks omitted]). " 'As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof ' " (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). A plain reading of Insurance Law § 3425 (d) (1) supports the conclusion that a change of limits includes the umbrella policy's change of the required underlying limits in the primary automobile policy. The phrase "change of limits," by its terms alone, includes a change of the umbrella policy's required underlying insurance limits. Furthermore, as the plaintiff contends, the change to the required underlying insurance limits also resulted in an indirect change in the umbrella policy limits. Prior to the change, the plaintiff had a total of up to $1,100,000/$1,300,000 in coverage available to him through the combination of both his underlying automobile insurance and his umbrella insurance. Of that total, the primary policy covered the first $100,000/$300,000 and the umbrella policy covered the remainder. After the change, the umbrella policy required that the plaintiff carry principal limits of $250,000/$500,000 and the umbrella policy would cover the excess. Since, however, the defendant did not properly notify the plaintiff that it was increasing its requirements as to the primary coverage, the plaintiff did not increase his primary coverage.

Consequently, a gap in coverage was created. Specifically, after exhaustion of the primary coverage, the plaintiff was not covered for that portion of liability that was between $100,000/$300,000 and $250,000/$500,000. Simply stated, this was a change of the coverage provided, and, thus, Allstate was required to provide notice of the change of the underlying limits.

In addition, a plain reading of Insurance Law § 3425 (d) (1) also supports the conclusion that a change of the underlying limits constituted an "elimination of any coverages," which required written notice. As a result of the change of the underlying limits, the plaintiff was no longer covered for the gap between the $100,000/$300,000 coverage of the primary policy and the $250,000/$500,000 coverage of the umbrella policy. Put another way, the change in the underlying limits eliminated the umbrella policy's coverage of automobile accidents from $100,000 to $250,000 per claimant and from $300,000 to $500,000 per accident. In effect, the plaintiff's coverage was eliminated for the extent of the gap in coverage.

Thus, Allstate was required, "at least forty-five but not more than sixty days in advance of the end of the policy period," to mail or deliver to the plaintiff "a written notice of its intention . . . to condition its renewal" on what was a new condition to coverage under the umbrella policy (Insurance Law § 3425 [d] [1]). Further, "[t]he specific reason or reasons for . . . conditioned renewal" were required to "be stated in or . . . accompany the notice" (*id.*). Pursuant to Insurance Law § 3425 (h) (2), "[n]o notice of cancellation, reduction of limits, substitution of policy form, elimination of coverages, conditioned renewal or of intention not to renew, or notice of the reasons therefor, that fails to include a provision required by this section shall be an effective notice for purposes of this section." " 'Insurance notice requirements are strictly construed and any ambiguities are to be interpreted in favor of the insured' " (*Essex·Ins. Co. v George E. Vickers, Jr., Enters., Inc.*, 103 AD3d 684, 688 [2013], quoting *Gedan v Home Ins. Co.*, 176 AD2d 914, 916 [1991]).

Here, Allstate failed to provide proper notice of the change of the underlying limits in the amended policy declarations accompanying the February 2005 letter or in the subsequent renewal notice of the policy in October of 2005. While these documents indicated that the underlying limits were $250,000 per claimant/$500,000 per occurrence, they did not indicate

that this was an actual change to the umbrella policy or provide any reason for the conditioned renewal. Further, Allstate failed to provide this notice in any of the subsequent renewal policies.

Allstate's reliance upon cases that have cited to the principle that an insured who is in receipt of an insurance policy is presumed to have read the policy and assented to its terms is misplaced. The cases cited by Allstate are readily distinguishable because they involve claims against insurance companies or brokers for negligent procurement of a policy or negligent misrepresentation as to the coverage provided by a policy (*see Portnoy v Allstate Indem. Co.*, 82 AD3d 1196, 1198 [2011]; *Stilianudakis v Tower Ins. Co. of N.Y.*, 68 AD3d 973, 974 [2009]; *Loevner v Sullivan & Strauss Agency, Inc.*, 35 AD3d 392, 394 [2006]; *Busker on Roof Ltd. Partnership Co. v Warrington*, 283 AD2d 376, 377 [2001]; *Rotanelli v Madden*, 172 AD2d 815, 817 [1991]). Such claims do not implicate the notice requirements of Insurance Law § 3425 (d) (1). In any event, even if the plaintiff is presumed to have read about the change of the underlying automobile insurance limits, there is no mention in the policy as to the reason for the change, as required under Insurance Law § 3425 (d) (1). Simply, if insurers were permitted to rely on this principle as a defense to claims pursuant to Insurance Law § 3425 (d) (1), the protections afforded thereunder to policyholders would be severely undermined, if not eviscerated. The purpose of the notice requirement is to ensure that policyholders are clearly notified as to any impending cancellation, nonrenewal, or conditional renewal and as to the reasons therefor. Indeed, the public policy underlying the statute mandates a broad interpretation protecting insureds by preventing gaps in coverage (*see Providence Washington Ins. Co. v Security Mut. Ins. Co.*, 35 NY2d 583, 586 [1974]; *Crump v Unigard Ins. Co.*, 291 AD2d 692, 693 [2002], *affd* 100 NY2d 12 [2003]; *cf. Zeman v Zack Agency*, 75 AD2d 261, 265 [1980]).

Through the enactment of Insurance Law § 3425, the legislature has specified how and on what terms a liability insurer may cancel, refuse to renew, or condition renewal of a policy. We hold that by creating a gap in coverage, Allstate effectuated a "change" of the limits of the policy which required the notification mandated by Insurance Law § 3425 (d) (1). We further conclude that reformation is the appropriate remedy for Allstate's failure to comply with the statutory notice requirement of Insurance Law § 3425 (d) (1), and that the

plaintiff's right to this remedy is not defeated by the fact that he was in possession of the revised version of the umbrella policy for approximately four years before he sought coverage for his July 2009 accident. Indeed, our courts have recognized that reformation is appropriate when there has been a violation of Insurance Law § 3425 (d) (3), even when the insured had a revised policy in his or her possession for years before bringing a claim thereunder (*see Bloom v St. Paul Travelers Cos., Inc.*, 57 AD3d 819 [2008]; *Janes v New York Cent. Mut. Ins. Co.*, 281 AD2d 982 [2001]), and we see no reason why there should be a different stringency when there has been a violation of Insurance Law § 3425 (d) (1).

The parties' remaining arguments are without merit or are academic in light of our determination. Accordingly, the order is reversed, on the law, Allstate's cross motion for summary judgment, in effect, for a declaration in its favor is denied, the plaintiff's motion for summary judgment to reform the excess liability insurance policy to provide coverage in the originally issued amounts of $100,000 to $1,000,000, and for a declaration that Allstate must provide coverage to the plaintiff for amounts between $100,000 and $250,000 is granted, and the matter is remitted to the Supreme Court, Orange County, for a determination as to damages and, thereafter, the entry of an appropriate judgment.

DILLON, J.P., LEVENTHAL and MALTESE, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the defendant's cross motion for summary judgment dismissing the complaint is denied, the plaintiff's motion for summary judgment to reform the excess liability insurance policy to provide coverage in the originally issued amounts of $100,000 to $1,000,000 and for a declaration that the defendant must provide coverage to the plaintiff for amounts between $100,000 and $250,000 is granted, and the matter is remitted to the Supreme Court, Orange County, for a determination as to damages and, thereafter, the entry of an appropriate judgment.