OPINION OF THE COURT
Mercure, J.P
This appeal presents the issue of whether statements falsely describing a person as lesbian, gay or bisexual constitute slander per se. Given this state’s well-defined public policy of protection and respect for the civil rights of people who are lesbian, gay or bisexual, we now overrule our prior case to the contrary and hold that such statements are not defamatory per se.
After a nonparty allegedly told defendant that plaintiff was gay or bisexual, defendant relayed that information to third-party defendant, a close family friend of plaintiff’s long-time girlfriend, with the hope that the girlfriend would be told. Plaintiff maintains that defendant’s actions caused the deterioration and ultimate termination of his relationship with his girlfriend. He commenced this action against defendant, alleging slander, intentional infliction of emotional distress and prima facie tort. Defendant then commenced the third-party action, seeking indemnification based upon the republication of the statements.
Supreme Court subsequently denied third-party defendant’s motion for summary judgment dismissing the third-party *143 complaint, and partially granted defendant’s motion for summary judgment by dismissing plaintiffs claims of intentional infliction of emotional distress and prima facie tort. The court denied defendant’s motion insofar as she sought dismissal of plaintiffs slander claim. As relevant here, the court concluded that it was bound to follow prior appellate case law holding that statements falsely imputing homosexuality constitute defamation per se and, thus, plaintiff’s slander claim need not be dismissed despite his failure to allege special damages. The parties cross-appeal, and we now modify by dismissing the complaint and third-party complaint in their entirety.
Whether particular statements are susceptible of a defamatory meaning — and therefore actionable — presents a question of law (see Golub v Enquirer/Star Group, 89 NY2d 1074, 1076 [1997]; Aronson v Wiersma, 65 NY2d 592, 593 [1985]). Only “[i]f the contested statements are reasonably susceptible of a defamatory connotation [does] it become[ ] the jury’s function to say whether that was the sense in which the words were likely to be understood by the ordinary and average [person]” (James v Gannett Co., 40 NY2d 415, 419 [1976] [internal quotation marks and citation omitted]). A statement has defamatory connotations if it tends to expose a person to “public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of [a person] in the minds of right-thinking persons” (Kimmerle v New York Evening Journal, Inc., 262 NY 99, 102 [1933]; accord Bytner v Capital Newspaper, Div. of Hearst Corp., 112 AD2d 666, 667 [1985], affd 67 NY2d 914 [1986]; see Golub v Enquirer Star Group, 89 NY2d at 1076). Because the defamatory tendency of a statement depends “upon the temper of the times [and] the current of contemporary public opinion,” a statement that is “harmless in one age . . . may be highly damaging to reputation at another time” (Mencher v Chesley, 297 NY 94, 100 [1947]).
Generally, a plaintiff asserting a cause of action sounding in slander must allege special damages contemplating “the loss of something having economic or pecuniary value” (Liberman v Gelstein, 80 NY2d 429, 434-435 [1992] [internal quotation marks and citation omitted]; accord Wadsworth v Beaudet, 267 AD2d 727, 728 [1999]). Plaintiff has not done so and, thus, he cannot maintain his slander claim unless the challenged statements constitute “slander per se” — those categories of statements that are commonly recognized as injurious by their *144 nature, and so noxious that the law presumes that pecuniary damages will result (see Liberman v Gelstein, 80 NY2d at 435). The four established “per se” categories recognized by the Court of Appeals are “statements (i) charging [a] plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that [a] plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman” (id.). As Supreme Court noted, the Appellate Division Departments, including this Court in dicta, have recognized statements falsely imputing homosexuality as a fifth per se category (see Klepetko v Reisman, 41 AD3d 551, 552 [2d Dept 2007]; Tourge v City of Albany 285 AD2d 785, 786 [3d Dept 2001]; Nacinovich v Tullet & Tokyo Forex, 257 AD2d 523, 524 [1st Dept 1999]; Matherson v Marchello, 100 AD2d 233, 241-242 [2d Dept 1984]; Privitera v Town of Phelps, 79 AD2d 1, 3 [4th Dept 1981], lv dismissed 53 NY2d 796 [1981]).
We agree with defendant and amici* that these Appellate Division decisions are inconsistent with current public policy and should no longer be followed. Defamation “necessarily . . . involves the idea of disgrace” (Bytner v Capital Newspaper, Div. of Hearst Corp., 112 AD2d at 667). Defendant and amici argue— correctly, in our view — that the prior cases categorizing statements that falsely impute homosexuality as defamatory per se are based upon the flawed premise that it is shameful and disgraceful to be described as lesbian, gay or bisexual. In fact, such a rule necessarily equates individuals who are lesbian, gay or bisexual with those who have committed a “serious crime”— one of the four established per se categories (see Liberman v Gelstein, 80 NY2d at 435).
That premise is inconsistent with the reasoning underlying the decision of the Supreme Court of the United States in Lawrence v Texas (539 US 558 [2003]), in which the Court held that laws criminalizing homosexual conduct violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution (id. at 578). The Court stated that people who are homosexual “are entitled to respect for their private lives” (id. [emphasis added]), but “[w]hen homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and in the private spheres” (id. at 575). These statements of the Supreme Court simply cannot be reconciled *145 with the prior line of Appellate Division cases concluding that being described as lesbian, gay or bisexual is so self-evidently injurious that the law will presume that pecuniary damages have resulted.
In regard to New York in particular, we locate “the public policy of [this] state in the law as expressed in statute and judicial decision and also [by] consider [ing] the prevailing attitudes of the community” (Debra H. v Janice R., 14 NY3d 576, 600 [2010], cert denied 562 US —, 131 S Ct 908 [2011] [internal quotation marks and citations omitted]; see Dickerson v Thompson, 73 AD3d 52, 54 [2010]). Rather than countenancing the view that homosexuality is disgraceful, the Human Rights Law, since 2002, has expressly prohibited discrimination based on sexual orientation in employment, public accommodations, credit, education and housing (Executive Law § 296). Most revealing of the respect that the people of this state currently extend to lesbians, gays and bisexuals, the Legislature passed the Marriage Equality Act (Domestic Relations Law § 10-a, as amended by L 2011, ch 95, § 3) in June 2011, which was strongly supported by the Governor and gave same-sex couples the right to marry in New York, thereby granting them all the benefits of marriage, including “the symbolic benefit, or moral satisfaction, of seeing their relationships recognized by the State” (Hernandez v Robles, 7 NY3d 338, 358 [2006]). Even prior to the Marriage Equality Act, this Court had previously explained that “the public policy of our state protects same-sex couples in a myriad of ways” — including numerous statutory benefits and judicial decisions expressing a policy of acceptance (Dickerson v Thompson, 73 AD3d at 54). Similarly “evidencing] a clear commitment to respect, uphold and protect parties to same-sex relationships [,] executive and local orders extend[ ] recognition to same-sex couples and grant[ ] benefits accordingly” (id.; see Godfrey v Spano, 13 NY3d 358, 380-381 [2009] [Ciparick, J., concurring] [detailing the many statutes and court decisions reflecting a public policy of acceptance of lesbians, gays and bisexuals]).
We note that the most recent Appellate Division decision considering the issue in depth was decided nearly 30 years ago (Matherson v Marchello, 100 AD2d 233, 241-242 [2d Dept 1984], supra). In that case, the Second Department concluded that it was “constrained . . . at this point in time” to hold that a statement imputing homosexuality was defamatory per se in light of the then-existing “social opprobrium of homosexuality” and *146 “[l]egal sanctions imposed upon homosexuals in areas ranging from immigration to military service” (id. at 241 [emphasis added and citation omitted]). Ultimately, the Court held that “the potential and probable harm of a false charge of homosexuality, in terms of social and economic impact, cannot be ignored” (id. at 242). In light of the tremendous evolution in social attitudes regarding homosexuality, the elimination of the legal sanctions that troubled the Second Department in 1984 and the considerable legal protection and respect that the law of this state now accords lesbians, gays and bisexuals, it cannot be said that current public opinion supports a rule that would equate statements imputing homosexuality with accusations of serious criminal conduct or insinuations that an individual has a loathsome disease (see Stern v Cosby, 645 F Supp 2d 258, 273-275 [SD NY 2009]; Albright v Morton, 321 F Supp 2d 130, 136-139 [D Mass 2004], affd on other grounds 410 F3d 69 [2005]; Donovan v Fiumara, 114 NC App 524, 528-531, 442 SE2d 572, 575-577 [1994]; Hayes v Smith, 832 P2d 1022, 1023-1025 [Colo 1991]; Boehm v American Bankers Ins. Group, Inc., 557 So 2d 91, 94 and n 1 [Fla 1990], review denied 564 So 2d 1085 [Fla 1990]; but see Gallo v Alitalia-Linee Aeree Italiane-S.p.A., 585 F Supp 2d 520, 549-550 [2008] [relying, in part, on our decision in Tourge v City of Albany (285 AD2d 785 [2001], supra) in concluding that statements imputing homosexuality remain slanderous per se under New York law]). While lesbians, gays and bisexuals have historically faced discrimination and such prejudice has not been completely eradicated, “the fact of such prejudice on the part of some does not warrant a judicial holding that gays and lesbians [and bisexuals], merely because of their sexual orientation, belong in the same class as criminals” (Stern v Cosby, 645 F Supp 2d at 275).
In short, the disputed statements in this case are not slanderous per se and, thus, plaintiffs failure to allege special damages requires that the remaining cause of action for slander be dismissed. Inasmuch as the complaint did not adequately allege extreme and outrageous conduct sufficient to support plaintiffs claim of intentional infliction of emotional distress or special damages to support a prima facie tort claim (see Howell v New York Post Co., 81 NY2d 115, 121-122 [1993], mod 82 NY2d 690 [1993]; Freihofer v Hearst Corp., 65 NY2d 135, 142-143 [1985]), Supreme Court properly dismissed those causes of action. Accordingly, the complaint and third-party complaint should be dismissed in their entirety.
*147 Stein, Garry and Egan Jr., JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendant’s motion for summary judgment dismissing the complaint and denied third-party defendant’s motion for summary judgment dismissing the third-party complaint; motions granted in their entirety and complaint and third-party complaint dismissed; and, as so modified, affirmed.

 An amicus curiae brief was filed by Lambda Legal Defense and Education Fund, Inc. and Empire State Pride Agenda.