Laguerre v Maurice (2020 NY Slip Op 07877)





Laguerre v Maurice


2020 NY Slip Op 07877


Decided on December 23, 2020


Appellate Division, Second Department


Roman, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
COLLEEN D. DUFFY, JJ.


2018-11567
 (Index No. 518431/2017)

[*1]Pierre Delor Laguerre, respondent,
v
Pastor Jean Renald Maurice, et al., appellants.



APPEAL by the defendants, in an action, inter alia, to recover damages for defamation per se, from an order of the Supreme Court (Devin P. Cohen, J.), dated June 13, 2018, and entered in Kings County. The order, insofar as appealed from, denied that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the first cause of action alleging defamation per se.



Lester Schwab Katz & Dwyer, LLP, New York, NY (John Sandercock and Steven B. Prystowsky of counsel), for appellants.
Maurice Dean Williams, Bronx, NY, for respondent.



ROMAN, J.


OPINION & ORDER
In this action, inter alia, to recover damages for defamation per se, the plaintiff alleges that he was defamed by the pastor of the defendant church when the pastor told members of the congregation that the plaintiff was a homosexual who viewed gay pornography on the church's computer. The Supreme Court, among other things, denied that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the first cause of action alleging defamation per se. On this appeal by the defendants, we consider, inter alia, whether resolution of the issues raised would necessarily involve an impermissible inquiry into religious doctrine or practice in violation of the First Amendment, and whether the false imputation that a person is a homosexual constitutes defamation per se. For the reasons that follow, we answer both of these questions in the negative.
The plaintiff is a former elder in the Gethsemane SDA Church (hereinafter the church). The defendant Pastor Jean Renald Maurice is the pastor in charge of the church, which allegedly is operated by the defendant The Greater New York Corporation of Seventh Day Adventist. In September 2017, the plaintiff commenced this action against the defendants, inter alia, to recover damages for defamation per se. As set forth in the complaint, Pastor Maurice stated before approximately 300 members of the church that "the [p]laintiff was a homosexual," and that "the [p]laintiff disrespected the church by viewing gay pornography on the church's computer." The complaint alleged that these statements constituted defamation per se, inasmuch as they falsely portrayed the plaintiff "as a homosexual man with no self-control who uses the church's computer to view gay porn." The complaint further alleged that Pastor Maurice used these statements to influence the church to vote to relieve the plaintiff of his responsibilities at the church and to terminate his membership.
The defendants moved pursuant to CPLR 3211(a) to dismiss the complaint, arguing, inter alia, that the Supreme Court lacked subject matter jurisdiction over the plaintiff's claims (see CPLR 3211[a][2]), and that the complaint failed to state a cause of action (see CPLR 3211[a][7]). Specifically, the defendants contended that the complaint should be dismissed for lack of subject matter jurisdiction because adjudication of the plaintiff's claims would require the court to [*2]impermissibly inquire into ecclesiastical proceedings, discipline, and church doctrine. In addition, the defendants argued that the complaint failed to state a cause of action to recover damages for defamation per se, since falsely ascribing homosexuality to a person no longer constituted defamation per se, and the plaintiff had failed to allege that he sustained any special damages. The defendants further argued, among other things, that the allegedly defamatory statements, which allegedly were made at a church membership meeting, were protected by a common-interest privilege.
In opposition to the defendants' motion, the plaintiff argued that the Supreme Court did not lack subject matter jurisdiction, as the court could decide the dispute based solely upon the application of neutral principles of law. The plaintiff also argued, among other things, that he had adequately stated a cause of action to recover damages for defamation per se, and that the Appellate Division, Second Department had held that the false imputation of homosexuality was reasonably susceptible of a defamatory connotation.
As relevant here, the Supreme Court denied that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the first cause of action alleging defamation per se. The court determined that the First Amendment was not implicated, as the dispute could be resolved with reference to neutral principles of secular law. Additionally, the court determined that the plaintiff had sufficiently stated a claim to recover damages for defamation per se. The defendants appeal.
"The First Amendment forbids civil courts from interfering in or determining religious disputes, because there is substantial danger that the state will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrines or beliefs" (Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d 282, 286; see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., 62 NY2d 110, 116; Eltingville Lutheran Church v Rimbo, 174 AD3d 856, 857). However, "[c]ivil disputes involving religious parties or institutions may be adjudicated without offending the First Amendment as long as" they "can be 'decided solely upon the application of neutral principles of . . . law, without reference to any religious principle'" (Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d at 286, quoting Avitzur v Avitzur, 58 NY2d 108, 115).
In the present case, the defendants maintain that the plaintiff's defamation per se claim is not justiciable in a civil court because adjudication of the claim would require the court to impermissibly inquire into internal church governance.
However, we agree with the Supreme Court's determination that the instant dispute may be determined by application of neutral principles of law. The allegedly defamatory remarks at issue, i.e., that the plaintiff is a homosexual who viewed gay pornography on the church's computer, may be evaluated without reference to religious principles (see Sieger v Union of Orthodox Rabbis of U.S. & Can., 1 AD3d 180, 182; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 348). The defendants point out that the church manual provides that "[f]ornication," which includes "homosexual activity," and the use of "pornographic material" are reasons for which members may be subject to discipline. However, the plaintiff does not challenge his expulsion from the church, or request reinstatement as a church elder. Thus, under the circumstances of this case, resolution of the issues raised would not involve an impermissible inquiry into religious doctrine or practice (cf. Drake v Moulton Mem. Baptist Church of Newburgh, 93 AD3d 685, 686).
Accordingly, contrary to the defendants' contention, they were not entitled to dismissal of the defamation per se cause of action pursuant to CPLR 3211(a)(2) for lack of subject matter jurisdiction.
We also reject the defendants' contention that they were entitled to dismissal of the defamation per se cause of action under CPLR 3211(a)(7) based on the common-interest qualified privilege. In assessing the adequacy of a complaint under CPLR 3211(a)(7), the court must afford the pleading a liberal construction, accept the facts alleged in the complaint to be true, and accord the plaintiff the benefit of every possible favorable inference (see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334; Leon v Martinez, 84 NY2d 83, 87; Murphy v Department of Educ. of the City of N.Y., 155 AD3d 637, 638). If the court considers evidentiary material, and the motion is not converted into one for summary judgment, the criterion then becomes "whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate" (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see Sokol v Leader, 74 AD3d 1180, 1181-1182).
Generally, a cause of action predicated on allegedly defamatory statements is subject to dismissal, inter alia, where the statements are protected by a qualified privilege (see Gottlieb v [*3]Wynne, 159 AD3d 799, 800). The qualified privilege defense extends to a communication made by one person to another upon a subject in which both have an interest (see Stillman v Ford, 22 NY2d 48, 53; Ferrara v Bank, 153 AD3d 671, 673; Kamchi v Weissman, 125 AD3d 142, 158). "This qualified privilege has been applied to communications carried out 'in furtherance of a common interest of a religious organization'" (Kamchi v Weissman, 125 AD3d at 158, quoting Berger v Temple Beth-El of Great Neck, 41 AD3d 626, 627). However, "the common-interest privilege can be overcome by a showing of malice" (Colantonio v Mercy Med. Ctr., 115 AD3d 902, 903; see Liberman v Gelstein, 80 NY2d 429, 437). "To establish the malice necessary to defeat the privilege, the plaintiff may show either common-law malice, i.e., spite or ill will, or may show actual malice, i.e., knowledge of falsehood of the statement or reckless disregard for the truth" (Diorio v Ossining Union Free School Dist., 96 AD3d 710, 712 [internal quotation marks omitted]; see Kamchi v Weissman, 125 AD3d at 158).
Here, to the extent that the common-interest privilege may apply to the communications at issue, which allegedly were made during a church membership meeting, the complaint sufficiently alleged that the statements were made with malice (see Colantonio v Mercy Med. Ctr., 115 AD3d at 903; Skarren v Household Fin. Corp., 296 AD2d 488, 489). The complaint, as amplified by the plaintiff's affidavit, alleged, among other things, that the plaintiff had a disagreement with Pastor Maurice which initially centered around church-related issues, and that Pastor Maurice stated that, if the plaintiff "[did] not submit to him," Pastor Maurice would "crumble" the plaintiff. As further set forth in the complaint, Pastor Maurice allegedly stated that he would make false statements against the plaintiff, and have the church membership vote to relieve the plaintiff of his responsibilities at the church. Accepting the facts as alleged in the complaint to be true, and according the plaintiff the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d at 87), it sufficiently alleged that Pastor Maurice made false statements of fact with malice so as to overcome the common-interest qualified privilege (see Kamchi v Weissman, 125 AD3d at 159; Diorio v Ossining Union Free School Dist., 96 AD3d at 712).
Nevertheless, the Supreme Court erred in determining that the complaint sufficiently stated a cause of action to recover damages for defamation per se. The elements of a cause of action to recover damages for defamation are (1) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (2) published without privilege or authorization to a third party, (3) amounting to fault as judged by, at a minimum, a negligence standard, and (4) either causing special harm or constituting defamation per se (see Levy v Nissani, 179 AD3d 656, 657-658; Gugliotta v Wilson, 168 AD3d 817, 818). "Special damages contemplate the loss of something having economic or pecuniary value" (Liberman v Gelstein, 80 NY2d at 434-435 [internal quotation marks omitted]). A statement is defamatory per se if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business, or profession; (3) imputes that the plaintiff has a loathsome disease; or (4) imputes unchastity to a woman (see id. at 435; Levy v Nissani, 179 AD3d at 658; Epifani v Johnson, 65 AD3d 224, 234). "When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven" (Liberman v Gelstein, 80 NY2d at 435).
"Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance" (Aronson v Wiersma, 65 NY2d 592, 593; see Tracy v Newsday, Inc., 5 NY2d 134, 136). "The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader [or listener], and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction" (Aronson v Wiersma, 65 NY2d at 594).
Here, the plaintiff, citing Matherson v Marchello (100 AD2d 233) and Klepetko v Reisman (41 AD3d 551), contends that the Second Department has previously recognized that the false imputation of homosexuality constitutes defamation per se.
In 1984, this Court decided Matherson v Marchello (100 AD2d 233). In Matherson, the plaintiffs, husband and wife, commenced an action to recover damages for defamation based upon certain statements made during a radio interview by the defendants, members of a singing group. The plaintiffs alleged, in pertinent part, that the statement directed at the plaintiff husband— "I think it was when somebody started messing around with his boyfriend that he really freaked out"— constituted an imputation of homosexuality which should be recognized as defamatory (id. at 241). This Court noted that "[i]t cannot be said that social opprobrium of homosexuality does not remain with us today," and that "[r]ightly or wrongly, many individuals still view homosexuality as immoral" (id.). Additionally, we observed that "[l]egal sanctions imposed upon homosexuals in areas ranging from immigration to military service [had] recently been reaffirmed" (id. [citations omitted]). Thus, we concluded that "the potential and probable harm of a false charge of [*4]homosexuality, in terms of social and economic impact, cannot be ignored," and "that the imputation of homosexuality is reasonably susceptible of a defamatory connotation . . . and is actionable without proof of special damages" (id. at 242 [internal quotation marks and citation omitted]).
In Klepetko v Reisman (41 AD3d 551), which was decided in 2007, the plaintiff commenced an action to recover damages for allegedly defamatory statements made in a column in a daily newspaper. The plaintiff challenged, among other remarks, the statement that he "lived with another middle-aged man," which the plaintiff alleged was "an insinuation that he is a homosexual" (id. at 551). This Court, quoting Matherson, stated that "[t]he false imputation of homosexuality is 'reasonably susceptible of a defamatory connotation'" (id. at 552, quoting Matherson v Marchello, 100 AD2d at 242). Ultimately, however, this Court held that "the statement that the plaintiff lived together with another middle-aged man [did] not readily connote a sexual relationship, particularly when viewed in the context of a column concerning irresponsible dog owners" (Klepetko v Reisman, 41 AD3d at 552).
As noted by the Third Department, the Appellate Division in all four Departments had recognized statements falsely imputing homosexuality as a category of defamation per se (see Yonaty v Mincolla, 97 AD3d 141, 144, citing Klepetko v Reisman, 41 AD3d at 552, Tourge v City of Albany, 285 AD2d 785, 786, Nacinovich v Tullet & Tokyo Forex, 257 AD2d 523, 524, Matherson v Marchello, 100 AD2d at 241-242, and Privitera v Town of Phelps, 79 AD2d 1, 3).
In Yonaty, which was decided in 2012, the Third Department held that these Appellate Division decisions were "inconsistent with current public policy and should no longer be followed" (Yonaty v Mincolla, 97 AD3d at 144). The court determined that "the prior cases categorizing statements that falsely impute homosexuality as defamatory per se [were] based upon the flawed premise that it is shameful and disgraceful to be described as lesbian, gay or bisexual," and that "such a rule necessarily equates individuals who are lesbian, gay or bisexual with those who have committed a 'serious crime'—one of the four established per se categories" (id.). The Third Department rejected this Court's holding in Matherson. The court reasoned that "[i]n light of the tremendous evolution in social attitudes regarding homosexuality, the elimination of the legal sanctions that troubled the Second Department in 1984 and the considerable legal protection and respect that the law of this state now accords lesbians, gays and bisexuals, it cannot be said that current public opinion supports a rule that would equate statements imputing homosexuality with accusations of serious criminal conduct or insinuations that an individual has a loathsome disease" (id. at 146).
We agree with our colleagues in the Third Department that the earlier cases, including this Court's decision in Matherson, which held that the false imputation of homosexuality constitutes a category of defamation per se, are inconsistent with current public policy. This profound and notable transformation of cultural attitudes and governmental protective laws impacts our own consideration of stare decisis. Indeed, as recognized by the United States District Court for the Southern District of New York in 2009, the decades since Matherson "have seen a veritable sea change in social attitudes about homosexuality," including the decision of the United States Supreme Court in 2003, in which the Court invalidated laws criminalizing intimate homosexual conduct as violative of the Fourteenth Amendment's Due Process Clause (Stern v Cosby, 645 F Supp 2d 258, 273-274 [SD NY], citing Lawrence v Texas, 539 US 558, 578). More recently, in 2015, the United States Supreme Court recognized the fundamental right of same-sex couples to marry in all states (see Obergefell v Hodges, 576 US 644, 675).
Notably, in New York, "the Human Rights Law, since 2002, has expressly prohibited discrimination based on sexual orientation in employment, public accommodations, credit, education and housing" (Yonaty v Mincolla, 97 AD3d at 145, citing Executive Law § 296). Moreover, marriage between persons of the same sex was permitted in New York years before the United States Supreme Court's decision in Obergefell (see Matter of Kelly S. v Farah M., 139 AD3d 90, 97; Yonaty v Mincolla, 97 AD3d at 145). The New York Legislature enacted the Marriage Equality Act in June 2011 (L 2011, ch 95 [eff July 24, 2011]).
Based on the foregoing, we conclude that the false imputation of homosexuality does not constitute defamation per se. Matherson's holding to the contrary should no longer be followed. Furthermore, the additional allegation that the plaintiff viewed gay pornography on the church's computer likewise does not fit within any of the categories of defamation per se. Therefore, the plaintiff was required to allege special damages. He failed to do so, and, consequently, his cause of action alleging defamation per se must be dismissed (see Yonaty v Mincolla, 97 AD3d at 146).
The parties' remaining contentions are without merit.
Accordingly, the order is reversed insofar as appealed from, on the law, and that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the first cause of [*5]action alleging defamation per se is granted.
CHAMBERS, J.P., HINDS-RADIX and DUFFY, JJ., concur.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the first cause of action alleging defamation per se is granted.
ENTER:
Aprilanne Agostino
Clerk of the Court