VIP Pet Grooming Studio, Inc. v Sproule (2024 NY Slip Op 00205)

VIP Pet Grooming Studio, Inc. v Sproule

2024 NY Slip Op 00205

Decided on January 17, 2024

Appellate Division, Second Department

Dillon, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 17, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LINDA CHRISTOPHER
BARRY E. WARHIT
CARL J. LANDICINO, JJ.

2021-04228
 (Index No. 612337/20)

[*1]VIP Pet Grooming Studio, Inc., respondent, 
v
Robert Sproule, et al., appellants.

APPEAL by the defendants, in an action, inter alia, to recover damages for defamation, from an order of the Supreme Court (Leonard D. Steinman, J.), entered May 24, 2021, in Nassau County. The order denied the defendants' motion pursuant to CPLR 3211(a)(7) and (g) to dismiss the complaint and for an award of attorneys' fees and costs.

Clare M. Sproule (Public Citizen Litigation Group, Wantagh, NY [Paul Alan Levy], of counsel), for appellants.
Leventhal, Mullaney & Blinkoff, LLP, Roslyn, NY (Steven G. Leventhal of counsel), for respondent.
Davis Wright Tremaine LLP, New York, NY (Laura R. Handman, James Rosenfeld, and Lindsey B. Cherner of counsel), for amici curiae Reporters Committee for Freedom of the Press, Gannett Co., Inc., Media Institute, MPA - The Association of Magazine Media, National Press Photographers Association, New York Public Radio, New York Times Company, Penguin Random House, LLC, Radio Television Digital News Association, Society of Environmental Journalists, and Vox Media, LLC.
Hartman & Winnicki, P.C., Hicksville, NY (Richard L. Ravin of counsel), for amici curiae Yelp, Inc., and Tripadvisor, LLC.

DILLON, J.P.

OPINION & ORDER
In 1992, legislation was enacted in this State to protect citizens against the use of civil lawsuits commenced to discourage them from public participation (see L 1992, ch 767, § 1 [eff Jan. 1, 1993]). Such lawsuits are termed SLAPP suits, i.e., strategic lawsuits against public participation, and the statute meant to protect against these suits is termed anti-SLAPP (see Gottwald v Sebert, 40 NY3d 240, 250). In 2020, the Legislature enacted amendments to expand the protection of the anti-SLAPP statute (see L 2020, ch 250 [eff Nov. 10, 2020]). The main question presented on this appeal, which is of first impression in the Appellate Division, Second Department, is whether these 2020 amendments apply retroactively to actions commenced before these amendments became effective, or prospectively, in connection with a motion to dismiss a complaint in lieu of an answer. We hold that the presumption of prospective application has not been overcome.
I. Relevant Facts
Sarah Sproule brought Ranger, a cocker spaniel puppy owned by Sarah and Robert Sproule (hereinafter together the Sproules), to VIP Pet Grooming Studio, Inc. (hereinafter VIP), a [*2]pet-grooming facility located in Wantagh. There, Ranger was bathed and then partially groomed before the groomer called Sarah asking her to pick up Ranger. According to VIP, Ranger was calm, healthy, and happy when Sarah picked him up. According to the Sproules, Ranger's breathing was labored and he was in distress when Sarah picked him up. The Sproules claim that they took Ranger to a veterinary emergency center where a veterinarian concluded that Ranger had aspirated water during the bathing process and was, essentially, drowning. Treatment efforts over the next several days proved unsuccessful, according to the Sproules, and, in consultation with a veterinarian, they decided to have Ranger put to sleep.
Robert allegedly posted on Yelp and Google public statements reading:
"I would strongly caution you against using this business. A grooming visit on March 4, 2020 ultimately ended with us having to put our 4-month old puppy to sleep two days later as a result of their negligence or incompetence. When we brought our happy healthy puppy in for a bath and cut, we specifically discussed our concerns regarding our puppy's hesitance to being bathed and the use of the clippers. We told the groomer that if there was any issue to stop and we would come get our puppy. Instead the groomer pushed our puppy through the process and only stopped and called us when it became very apparent that there was something physically wrong with our puppy. When we picked him up, he was clearly in distress, and we rushed him to the emergency vet. He had water in his lungs that the vet said could only have come from a dramatic physical accident at the groomer. Despite two days at the vet on a ventilator he continued to decline and we had to make the hard decision to let him go. We tried to discuss the situation with the groomer. They have taken no responsibility and in fact were abusive. They have threatened us financially and legally regarding telling our story. We will be pursuing legal recourse against this business when the courts reopen. You would be best finding another groomer."
The Sproules on the one side, and VIP on the other, commenced civil lawsuits against each other. The Sproules commenced an action against VIP in the District Court, Nassau County, on August 17, 2020, to recover damages and for an award of attorneys' fees, alleging that Ranger's injuries resulted from VIP's negligent conduct while Ranger was in VIP's care. VIP commenced this action against the Sproules in the Supreme Court, Nassau County, on November 2, 2020, to recover damages for defamation and for related injunctive relief. Eight days later, on November 10, 2020, certain amendments were enacted and became effective which expanded the scope of the State's anti-SLAPP statute, Civil Rights Law §§ 70-a and 76-a.
On January 11, 2021, the Sproules moved in this action pursuant to CPLR 3211(a)(7) and (g) to dismiss the complaint and for an award of attorneys' fees and costs. VIP opposed the motion. In an order entered May 24, 2021, the Supreme Court denied the motion. The Sproules appeal from the order.
II. Whether the 2020 Amendments to the Anti-SLAPP Statute Are Retroactive or Prospective
As enacted in 1992, the anti-SLAPP statute was "designed to protect citizens who participate in public affairs," namely, those relating to applications requiring government approval, against retaliatory lawsuits (Assembly Mem in Support, Bill Jacket, L 1992, ch 767 at 8). Civil Rights Law former § 76-a(1)(a) provided:
"An 'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission."
The statute defined an "action involving public petition and participation" narrowly to include only claims "brought by a public applicant or permittee," further defined as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or [*3]permission" (id. former § 76-a[1][a], [b]). Claims covered by the statute required proof of actual malice by clear and convincing evidence (see id. former § 76-a[2]). The intent of the anti-SLAPP statute was to protect citizens from litigation arising out of their public petitioning and participation (see Waterways at Bay Pointe Homeowners Assn., Inc. v Waterways Dev. Corp., 132 AD3d 975, 979; Singh v Sukhram, 56 AD3d 187, 194). Defendants were entitled to interpose a counterclaim under the anti-SLAPP statute and, if successful, could potentially recover costs, attorneys' fees, and compensatory and punitive damages (see Civil Rights Law former § 70-a[1][a], [b], [c]).
A motion pursuant to CPLR 3211(a)(7) and (g) to dismiss, where the moving party demonstrates that the claim subject to the motion qualifies as an action involving public petition and participation, "shall be granted" unless the party responding to the motion demonstrates that the cause of action "has a substantial basis in law or is supported by a substantial argument for an extension, modification, or reversal of existing law" (id. former § 3211[g]; see Mable Assets, LLC v Rachmanov, 192 AD3d 998, 1000). In other words, CPLR former 3211(g) flipped the burden of proof on the ultimate dispositive merits; it provided that the party moving for dismissal need not establish a dispositive procedural or substantive defense on the merits of the action, as otherwise required under other provisions of CPLR 3211, but rather, need only establish that the true nature of the action is one within the scope of anti-SLAPP. The actual burden of proof as to the action's meritoriousness is thereupon shifted in the context of anti-SLAPP immediately to the plaintiff, which is unique. The same burden shifting applies to anti-SLAPP-related dismissal motions addressed to other forms of pleadings, such as cross-claims or counterclaims (see Civil Rights Law § 70-a[1]) and, for that matter, to anti-SLAPP-involved motions for summary judgment under CPLR 3212(h) (see Waterways at Bay Pointe Homeowners Assn., Inc. v Waterways Dev. Corp., 132 AD3d at 980; Southampton Day Camp Realty, LLC v Gormon, 118 AD3d 976, 978). Thus, in light of CPLR former 3211(g) and Civil Rights Law former § 76-a(2), a motion to dismiss a SLAPP suit alleging defamation was to be more readily granted than was a motion to dismiss other claims, to protect defendants from actions involving public petition and participation. The same may be said of other anti-SLAPP-inspired causes of action such as prima facie tort, abuse of process, and tortious interference with contractual relations (see Reeves v Associated Newspapers, Ltd., 217 AD3d 550, 552; 215 W. 84th St Owner LLC v Bailey, 217 AD3d 488; Mable Assets, LLC v Rachmanov, 192 AD3d at 1001).
The Legislature enacted the 2020 amendments to "extend the protection" of the 1992 statute to a broader class of individuals (Assembly Mem in Support, Bill Jacket, L 2020, ch 250 at 5). Those amendments substantially expanded the definition of an "action involving public petition and participation" to include
"a claim based upon:
"(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
"(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (Civil Rights Law § 76-a[1][a]).
The term "'[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely private matter" (id. § 76-a[1][d]; see Aristocrat Plastic Surgery P.C. v Silva, 206 AD3d 26, 29; Balliet v Kottamasu, 76 Misc 3d 906, 923-924 [Civ Ct, Kings County]). The 2020 amendments to the Civil Rights Law expanded the pool of parties that may raise anti-SLAPP defenses, counterclaims, and cross-claims in their actions, now including journalists, consumer advocates, survivors of sexual abuse, and others. The expansion will naturally lead to an increase in the occasions where anti-SLAPP statutes shall be litigated in the courts. In fact, some upswing is already noted in this developing area of law.
The 2020 amendments altered the remedy offered by Civil Rights Law § 70-a for defendants falling within the purview of the amended Civil Rights Law § 76-a. Civil Rights Law § 70-a(1) empowers defendants to "maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such [*4]action." The award of costs and attorneys' fees to defendants was made mandatory (see id. § 70-a[1][a]), rather than discretionary as provided for in the prior version of the statute, and adds yet another layer of legal strategy in the commencement of, or defense of, actions that might qualify under anti-SLAPP and litigiousness that may flow from it.
The amendments made certain additions to CPLR 3211(g) but did not change the standard to be applied on a motion to dismiss in cases involving public petition and participation (see id. § 3211[g][1], [2], [3], [4]), that dismissal motions in such actions "shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law" (id. § 3211[g][1]).
Also unchanged by the 2020 amendments is that, in an action involving public petition and participation,
"damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue" (Civil Rights Law § 76-a[2]).
Thus, with the 2020 amendments, it remains the case that, in light of CPLR 3211(g) and Civil Rights Law § 76-a(2), the burden shifting of a motion to dismiss a SLAPP suit alleging defamation remains the same.
Here, this action was commenced by VIP on November 2, 2020, eight days before the effective date of the anti-SLAPP amendments, November 10, 2020. The Sproules contend that the amended version of the anti-SLAPP statute should be applied to this action. They urge that the online comments fit within the expanded definition of an action involving public petition and participation, establishing the standard to be applied to their motion to dismiss the defamation cause of action as that of CPLR 3211(g) and Civil Rights Law § 76-a(2). Indeed, social media postings by critical consumers, while not necessarily falling within the definition of public petition, might nevertheless generally qualify as public participation in furtherance of the public interest (see Aristocrat Plastic Surgery P.C. v Silva, 206 AD3d at 31-32 [action involving a patient's negative review of a physician on two social media sites]; cf. Balliet v Kottamasu, 76 Misc 3d at 923-924).
However, in our view, the Sproules did not establish that this action constitutes an action involving public petition and participation under the anti-SLAPP statute in the form that existed when this action was commenced (cf. Mable Assets, LLC v Rachmanov, 192 AD3d at 1000). Thus, to decide whether the standards under CPLR 3211(g) and Civil Rights Law § 76-a(2) apply, we must address whether the 2020 amendments to the anti-SLAPP statute apply retroactively or prospectively.
Several courts, most notably some federal District Courts, have concluded that the 2020 amendments to the anti-SLAPP statute apply retroactively (see Palin v New York Times Co., 510 F Supp 3d 21, 27-28 [SD NY, Rakoff, J.]; see also Sackler v American Broadcasting Cos., Inc., 71 Misc 3d 693, 697-698 [Sup Ct, NY County]; Sweigert v Goodman, 2021 WL 1578097, *2, 2021 US Dist LEXIS 77704, *4-5 [SD NY, No. 1:18-cv-08653 (VEC) (SDA)]; Coleman v Grand, 523 F Supp 3d 244, 258-259 [ED NY, Vitaliano, J.]). In Palin, for example, the United States District Court for the Southern District of New York held, among other things, that Civil Rights Law § 76-a is a "remedial statute that should be given retroactive effect. The Legislature conveyed a sense of urgency by directing that the amendment was to take effect immediately. Moreover, the legislative history demonstrates that the amendments to [Civil Rights Law] § 76-a were intended to correct the narrow scope of New York's prior anti-SLAPP law" (Palin v New York Times Co., 510 F Supp 3d at 27 [citations and internal quotation marks omitted]).
The Appellate Division, First Department, addressed the same issue in Gottwald v Sebert (203 AD3d 488 [hereinafter Gottwald I], revd 40 NY3d 240) and reached a different conclusion. In Gottwald I, the First Department noted that the original anti-SLAPP statute had been enacted almost 30 years before the amendments, and that the amendments were enacted to address shortfalls perceived in the statute's original language. The court noted the absence of any actual [*5]retroactivity language in the anti-SLAPP amendments and, therefore, applied the well-worn presumption that the amendments were prospective only as measured from their effective date (see id. at 488). Gottwald I was followed by the First Department in subsequent cases (see Reeves v Associated Newspapers, Ltd., 217 AD3d at 550; Cisneros v Cook, 209 AD3d 519; Kurland & Assoc., P.C. v Glassdoor, Inc., 205 AD3d 545; Robbins v 315 W. 103 Enters. LLC, 204 AD3d 551).
Hoi Trinh v Nguyen (211 AD3d 1623), from the Appellate Division, Fourth Department, was a case of alleged defamation and defamation per se that fell within the provisions of the anti-SLAPP statute and was commenced prior to the 2020 amendments of the statute. A twist to Hoi Trinh was that while the 2020 amendment to the statutory costs and attorneys' fees provisions of Civil Rights Law § 70-a(1)(a) were not in effect at the time of the action's commencement, they were in effect by the time the defendant moved for a CPLR 3211(g) dismissal of the complaint, as here. The Supreme Court, Erie County, applied the costs and attorneys' fees provisions retroactively in favor of the successful moving defendant. But the Fourth Department held otherwise, noting that the 2020 amendments contained no provision that the language of the amendments was to be applied retroactively, that statutes are presumed to be prospective, and that a retroactive application of the amendments would impair the rights the plaintiff possessed when the action was initially filed, increase his liability for past conduct, and impose new duties with respect to transactions already completed (see Hoi Trinh v Nguyen, 211 AD3d at 1624-1625).
Subsequently, the Court of Appeals, upon, inter alia, a grant of leave to appeal from the First Department's order in Gottwald I, rendered its decision of Gottwald v Sebert (40 NY3d 240 [Garcia, J.] [hereinafter Gottwald II]) on June 13, 2023. One issue addressed in Gottwald II was whether the 2020 amendments to the anti-SLAPP statute applied to that litigation, which was commenced prior to their effective date. The defendant contended that the broadened definition of public petition and participation in Civil Rights Law § 76-a applied to the action and established the governing standard for liability—a contention much like that advanced by the Sproules on this appeal. However, because the Court held that the plaintiff in that case was a limited public figure who must prove by clear and convincing evidence that the allegedly defamatory statements were made with actual malice, the Court did not need to address whether the provision for that same evidentiary standard in the amended Civil Rights Law § 76-a applied retroactively to actions pending at the time of the 2020 enactments (see Gottwald v Sebert, 40 NY3d at 257).
The Court of Appeals nevertheless addressed the defendant's further contention that she could assert a counterclaim for money damages and attorneys' fees under the amended version of Civil Rights Law § 70-a. To resolve this further contention, the Court did analyze the issue of retroactivity. The Court held that since the Legislature did not expressly prescribe the statute's proper reach, it had to apply the judicial default rules for assessing retroactivity. Pursuant to those rules, the Court looked in the first instance to the statutory text to determine whether it was intended to have retroactive effect. The Court held that for actions pending before the 2020 amendments to the anti-SLAPP statute, the language of the provisions regarding costs, attorneys' fees, and damages expressly pertains to qualifying actions which are "commenced or continued" after the amendments' effective date (id. § 70-a[1][a], [b], [c] [emphasis added]; see Gottwald v Sebert, 40 NY3d at 259). Consequently, reasoned the Court, the 2020 amendments to Civil Rights Law § 70-a apply prospectively to qualifying actions that are "continued" beyond the effective date of those amendments, and not retroactively (see Gottwald v Sebert, 40 NY3d at 258-259).
Indeed, the Court of Appeals did not find anything approaching the required expression of clear legislative intent to justify a retroactive application of the statute. "While the statute directs that it shall take effect immediately, we have previously held that, for purposes of determining retroactive application, the meaning of [that] phrase is equivocal and is not enough to require application to pending litigation" (id. at 259 [citation and internal quotation marks omitted]). Nor, said the Court, was there anything in the amended statute requiring retroactive application by necessary implication. A statute imposing damages was not the sort of remedial change that should presumptively apply in preexisting cases. This was not, according to the Court, a case where the legislative history indicates that the purpose of the new legislation was to clarify what the law was always meant to say and do or to correct an overly narrow interpretation by the courts. "Rather, the legislature intended the amendments to greatly expand the limited coverage offered by the original anti-SLAPP statute. Accordingly, the strong presumption against retroactive legislation has not been overcome with respect to the amendments to the anti-SLAPP statute" (id. at 260 [citation omitted and emphasis added]).
It is true that Gottwald II addressed whether the defendant in that case could assert a post-amendment counterclaim under Civil Rights Law § 70-a and not, as in this case, whether the broadened definition of public petition and participation applied to this action and established the governing standard, under CPLR 3211(g) and Civil Rights Law § 76-a(2), to be applied on a motion to dismiss. In addressing the counterclaim issue, however, the Gottwald II Court noted "the strong presumption against retroactive legislation has not been overcome with respect to the amendments to the anti-SLAPP statute" (Gottwald v Sebert, 40 NY3d at 260).
We hold that the presumption of prospective application has not been overcome here. Indeed, the remedial nature of a statutory amendment, which is generally at play with many amendments, is not a basis, in and of itself, for ignoring the long-standing legal presumption that new enactments be prospective, particularly where there is no expressed provision that a new law be given retroactive effect (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584; Hoi Trinh v Nguyen, 211 AD3d at 1625). All statutory amendments are, at some level, remedial. "[T]he legislative history does not offer any explicit or implicit support for retroactive application" (Hoi Trinh v Nguyen, 211 AD3d at 1625 [citing 2019 NY Senate Bill S52A and 2019 NY Assembly Bill A5991A]). A retroactive application of the anti-SLAPP amendments to the pre-amendment complaint in this action could negatively impact substantive rights that VIP possessed at the time the action was commenced, which is a further ground in favor of the presumption against retroactivity (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 370; Hoi Trinh v Nguyen, 211 AD3d at 1624). Had the Legislature intended for the 2020 amendments to the anti-SLAPP statute to be applied retroactively, it could have said so.
It is of no moment that the Sproules' dismissal motion was filed after the anti-SLAPP amendments had gone into effect. The dismissal motion, filed in lieu of an answer, is addressed to a complaint that precedes the November 10, 2020 effective date of the anti-SLAPP amendments. Without retroactivity, the complaint must be viewed under the former iterations of Civil Rights Law §§ 70-a and 76-a, which, as noted, limit anti-SLAPP relief only to matters involving public petition and participation brought by public applicants and permittees (see id. former § 76-a[1][a], [b]; Hoi Trinh v Nguyen, 211 AD3d at 1624). Only actions within the scope of the former anti-SLAPP statute, if continued after the effective date of the 2020 anti-SLAPP amendments, are subject to the remedial provisions of Civil Rights Law §§ 70-a and 76-a as amended.
In sum, the broadened definition of public petition and participation under Civil Rights Law § 76-a does not apply retroactively to this action. The complaint, therefore, is governed by the prior statutory definition of public petition and participation, which was limited, at the time of this action's commencement, to matters involving only public applicants and permittees, and did not apply to a broader universe of defendants such as the Sproules (see id. former § 76-a[1][a], [b]).
III. Denial of the Sproules' Motion to Dismiss for Single Instance of Professional Error
The Sproules otherwise failed to demonstrate their entitlement to a CPLR 3211(a)(7) dismissal of the complaint. They contend, inter alia, that the complaint should have been dismissed because the online reviews were addressed to a single instance of professional error, yet VIP failed to allege special damages.
"On a motion to dismiss the complaint pursuant to CPLR 3211(a)(7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible [favorable] inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Rabos v R & R Bagels & Bakery, Inc., 100 AD3d 849, 851 [internal quotation marks omitted]; see Leon v Martinez, 84 NY2d 83, 87). "The elements of a cause of action [alleging] defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se" (Bowen v Van Bramer, 205 AD3d 674, 674-675 [internal quotation marks omitted]; see Greenberg v Spitzer, 155 AD3d 27, 41).
While plaintiffs in defamation actions must generally plead and prove special damages, they need not do so where the defamation constitutes defamation per se (see Laguerre v Maurice, 192 AD3d 44, 50; Rufeh v Schwartz, 50 AD3d 1002, 1004). A false statement may qualify as defamation per se if it, inter alia, "'charges another with a serious crime or tends to injure another in his or her trade, business, or profession'" (Davidoff v Kaplan, 217 AD3d 918, 920, quoting Matter of Konig v CSC Holdings, LLC, 112 AD3d 934, 935). The single instance rule is an exception to [*6]the general per se rule, pertaining to language that charges a party with a single dereliction in connection with the conduct of a business, trade, or profession (see D'Agrosa v Newsday, Inc., 158 AD2d 229, 237). In such instances, because the "statement does not accuse a party of general ignorance or lack of skill, it is not deemed actionable unless special damages are pleaded and proven" (id. at 237; see Perez v Lopez, 97 AD3d 558, 559; Porcari v Gannett Satellite Info. Network, Inc., 50 AD3d 993, 994).
Here, special damages are not specifically alleged. But accepting the facts as alleged in the complaint to be true and according the plaintiff the benefit of every possible favorable inference, as we must, the complaint states a cause of action. The alleged defamatory statements exceed a simple allegation of mere mistake or lapse of judgment on a single occasion, as they describe the alleged causation of Ranger's death, VIP's subsequent alleged abusive behavior, and threats of legal and financial ruin allegedly made to the Sproules, thereby indicating a lack of character and unfitness by VIP in its profession (see Perez v Lopez, 97 AD3d at 559).
IV. Denial of the Sproules' Motion to Dismiss on the Basis of Pure Opinion
Contrary to the Sproules' contentions, the challenged statements did not constitute pure nonactionable opinion (see Crime Victims Ctr., Inc. v Logue, 181 AD3d 556, 557). "Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action" (Silverman v Daily News, L.P., 129 AD3d 1054, 1055 [internal quotation marks omitted]; see Gross v New York Times Co., 82 NY2d 146, 152-153). "In distinguishing between facts and opinion, the factors the court must consider are (1) whether the specific language has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the context in which the statement appears signals to readers that the statement is likely to be opinion, not fact" (Silverman v Daily News, L.P., 129 AD3d at 1055). "[I]n determining whether a complaint states a cause of action to recover damages for defamation, the dispositive inquiry is whether a reasonable listener or reader could have concluded that the statements were conveying facts about the plaintiff" (Udell v NYP Holdings, Inc., 169 AD3d 954, 956 [internal quotation marks omitted]; see Goldberg v Levine, 97 AD3d 725, 725). Additionally, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it . . . is a mixed opinion and is actionable" (Davis v Boeheim, 24 NY3d 262, 269 [internal quotation marks omitted]).
The alleged defamatory statements include "[a] grooming visit...ultimately ended with us having to put our 4-month old puppy to sleep two days later as a result of their negligence or incompetence[,]" and the puppy "had water in his lungs that the vet said could only have come from a dramatic accident at the groomer." Those statements can be proven true or false and, given the tone and overall context in which the statements were made, signaled to the average reader that facts were being conveyed about the plaintiff (see Levy v Nissani, 179 AD3d 656, 659). Even if the statements had not conveyed assertions of fact, they would nonetheless be actionable as mixed opinion, since a reasonable reader would have inferred that the poster had knowledge of facts, unknown to the audience, supporting the assertions made (see id. at 659).
V. Attorneys' Fees and Costs
The Sproules' contention that they are entitled to an award of attorneys' fees and costs under Civil Rights Law § 70-a is without merit. The Sproules' did not show that this is an action involving public petition and participation, given that the former, narrower definition of public petition and participation applies to the complaint. In any event, the Sproules have not asserted a counterclaim for an award of attorneys' fees and costs.
VI. Miscellaneous
To the extent the Sproules' contend that the complaint should be dismissed insofar as asserted against Sarah on the basis that she did not actually post the alleged defamatory statements at issue, this contention is not properly before us, as it was raised for the first time at oral argument. The parties' remaining contentions, regarding whether the social media postings involved a purely private matter or addressed matters of public interest under the anti-SLAPP statute, need not be reached in light of our determination.
Accordingly, the Supreme Court properly denied the Sproules' motion pursuant to CPLR 3211(a)(7) and (g) to dismiss the complaint and for an award of attorneys' fees and costs.
In light of the foregoing, the order is affirmed.CHRISTOPHER, WARHIT and LANDICINO, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court